**Douglas A. PAGE and Carolyn Page, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 86–2327.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1987.

Decided July 14, 1987.

Rehearing Denied Aug. 13, 1987.

· Randall D.B. Tigue, Minneapolis, Minn., for appellants.

Michael L. Paup and Roger M. Olsen, Washington, D.C., for appellee.

Before LAY, Chief Judge, MAGILL and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge.

Douglas A. Page and Carolyn Page ("appellants") appeal from a decision (No. 18580–84) entered August 5, 1986 in the United States Tax Court, Joel Gerber, *Judge*, 51 T.C.M. (CCH) 1351, which determined a deficiency in appellants' federal income tax for the tax year 1980 and in Douglas' federal income tax for the tax year 1981. The Court imposed additions to tax with respect to these deficiencies under Int.Rev.Code of 1954, § 6653(a).[1] Douglas appeals also from a decision (No. 822–85) entered July 10, 1986 in the Tax Court, Joel Gerber, *Judge*, which determined a deficiency in his federal income tax for the tax year 1982. The Court imposed additions to tax with respect to this deficiency under §§ 6651(a), 6653(a) and 6654. Appellants on October 14, 1986 filed a single notice of appeal from the Tax Court decisions.

Appellants organized and operated Chapter 8035 of the Basic Bible Church of America and later changed its name to the American Fundamentalist Church. Shortly after organizing this "church", appellants took a vow of poverty and transferred their home to themselves as trustees for the church. Assuming themselves exempt from federal income taxation because of their relationship with this religious organization, appellants did not pay any tax on the income they received from secular employment. Consequently, the Commissioner of Internal Revenue ("Commissioner") issued notices of tax deficiency to appellants. Appellants contested the deficiency by filing petitions with the Tax Court.

After a trial, the Tax Court held that appellants were not entitled to any charitable deductions for sums they purportedly transferred to the Basic Bible Church and to the American Fundamentalist Church ("the churches"). The Court further held that appellants received income during each of the tax years as principals, not as agents of the churches, and that these sums were subject to the federal income tax. The Court accordingly sustained the Commissioner's determination of a deficiency in appellants' income tax for the 1980 and 1981 taxable years and his assessments against appellants (No. 18580–84) of additions to tax under § 6653(a) for negligence and intentional disregard of the rules and regulations of the IRS, and held that appellants failed to prove that these assessments were improper.

The Tax Court also sustained the Commissioner's determination of a deficiency in Douglas' income tax for the taxable year 1982 (No. 822–85) and the additions to tax under § 6654 for failure to pay the estimated tax for that year, and held that Douglas had failed to prove that this assessment was improper. (As stated below, we do not have appellate jurisdiction with respect to the appeal in No. 822–85, which accordingly is dismissed.)

On appeal, appellants argue, first, that the Tax Court erred in refusing to grant appellants a continuance for the purpose of conducting discovery on the issue of denominational preference in the administration of IRS policies and regulations with respect to the assignment of income earned

---

* Of the Second Circuit, by designation.
.
**1.** Unless otherwise stated, all statutory citations in this opinion are to sections of the Internal Revenue Code of 1954 as amended, which in turn correspond to sections of Title 26 of the United States Code, 1982 codification.

For example, here, Int.Rev.Code of 1954, § 6653(a), 26 U.S.C. § 6653(a) (1982). We would cite it hereafter as § 6653(a).

by clergymen; second, that the Tax Court erred in determining that appellants received income as principals and not as agents of the churches; third, that the Tax Court erred in finding that appellants were not entitled to a charitable deduction for income transferred to the churches; and, fourth, that the Tax Court erred in sustaining the Commissioner's determination of deficiencies in appellants' income tax for the 1980 and 1981 tax years and his imposition of additions to tax for negligence and intentional disregard of the rules and regulations of the IRS.

The Commissioner argues that this Court does not have jurisdiction to consider the appeal from the Tax Court's July 10, 1986 decision regarding Douglas' 1982 tax deficiency. The Commissioner argues, however, that the Tax Court correctly held that appellants were liable for deficiencies in their income tax for the 1980 and 1981 tax years and for the additions to tax imposed by the Commissioner. In addition, the Commissioner requests that this Court impose sanctions upon appellants for bringing this frivolous appeal.

We hold, first, that this Court does not have appellate jurisdiction to consider the appeal from the decision regarding Douglas' 1982 tax deficiency; second, that the Tax Court correctly denied appellants' motion for a continuance; third, that appellants received the income as agents of the churches and that appellants are not entitled to any charitable deductions for any amounts transferred to either of the churches; fourth, that the Tax Court correctly sustained the Commissioner's determination of deficiencies in appellants' income tax for the 1980 and 1981 tax years and that the imposition of additions to tax under § 6653(a) was proper; and, fifth,

that, inasmuch as this is a wholly frivolous appeal, our imposition of sanctions against appellants in this Court is appropriate.

### I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

In 1978, appellants, husband and wife,[2] joined the Basic Bible Church of America. The philosophy of that church is that big government is driving apart the family unit and that the country is "headed to the dogs". Specifically, the by-laws of the church expound its philosophy as follows: "The basic Doctrines, Principles and Beliefs held as 'Truth' of the Basic Bible Church are the Declaration of Independence and the Constitution of the United States, and the sacred Bible. (16th[3] and 25th Amendments[4] are not included in the Doctrine of B.B.C.)" (footnotes added). The by-laws provide further:

"[t]hat public servants holding the power of force in any country in any age are the most dangerous threat to man's life. These publi[c] servants, who after having taken a solemn, sworn oath to support the constitution, and then, with uninhibited abandon, ride down the natural rights of the Individual, constitute the Citizen's deadliest enemy.... That at all times it is required that, in the protection of the morals of society as a whole, the membership of this Order shall support a 'Free-enterprise, capitalistic society['] as opposed to all 'Statist Societies' based upon communism, collectivism, monarchy, fascism or other dictatorship of any kind or nature. It is a sacred principle that complete soverignty [sic] resides in the Individual. Further, that a

2. Appellants were married at all times relevant to this appeal. In 1982, however, appellants separated and Carolyn moved to California. In 1984, appellants were divorced. Carolyn is named as an appellant because she joined the petition to the Tax Court in No. 18580–84, having filed a joint return with her husband for the 1980 tax year. For the 1981 and 1982 tax years they filed individual returns. Deficiency notices for those years were issued only to Douglas.

3. The Sixteenth Amendment provides that "[t]he Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

4. The Twenty-fifth Amendment provides for the succession of the presidency in the event of the death or resignation of the President.

government of laws is the best and that public servants can only act as deputies in carrying out the soverign [sic] authority of the people.... The Sacerdotal functions performed by this Order shall consist of the dispensation and recieving [sic] of natural vitamins, including Laetrille [sic] or vitamin B–17 in such manner as complies with reason for the purpose of aid, comfort and healing the sick and injured. In each instance appropriate ceremony, rites and formalities shall be entered into."

An aggregation of separate Chapters constitutes the church membership. All of these Chapters are under the leadership of Jerome Daly, who has the sole power to form Chapters and to appoint the "Head" of each Chapter.

Appellants organized Chapter 8035 in May 1978. At that time Jerome Daly sent them forms which ordained them as ministers of the Basic Bible Church, chartered their Chapter and appointed Douglas Page as the Head of this Chapter. Under the terms of the by-laws of Chapter 8035, Douglas, as the Head of the Chapter, holds his position for life and is vested with the sole authority of the Chapter. He named three trustees of the Chapter: Carolyn, Wayne Chermack, and himself. The trustees, however, have no right to vote; their sole function is to hold property in trust for the Chapter and to advise Douglas. The latter also has the sole power to control and disburse the funds and property of the Chapter for his own support and for the support of other members of the Basic Bible Church.[5] The record does not disclose exactly how many members appellants' Chapter had, but it appears that there were never more than a very few.

The package of forms Jerome Daly sent to appellants in connection with the organization of their Chapter included advice on how to comply with § 501(c)(3) of the Internal Revenue Code. Following this advice, appellants opened a checking and savings account in the name of the Basic Bible Church. At all times relevant to this appeal, appellants were the only authorized signatories on these accounts.

Appellants also transferred title to their residence from themselves as husband and wife to themselves "as joint trustees, with the right of survivorship, for the Basic Bible Church of America, Ch. 8035". This residence is a two-story home. Appellants resided on the second floor. They built a workshop, office and chapel on the first floor. The chapel contains two pews, some chairs, a bookshelf and a pool table.

The forms Daly sent to appellants directed them to take a vow of poverty; to obtain gainful employment in their respective occupations, as agents of the church; and to turn over to the church the income earned from their work. In 1980, Carolyn obtained a secretarial position with the Employers Overload Company. She earned a total of $1,402.51 that year. Her employer did not withhold any federal income tax because she submitted a letter stating that her position as a minister of the Basic Bible Church exempted her from taxation. Appellants deposited a portion of this income in the church bank account; but, in keeping with the church doctrines directing them to convert any excess money or securities into coins, they converted most of it into silver coins. These coins were kept in the "cash box" maintained by appellants in their home. They did this to avoid an IRS levy on their bank account to the extent of the value of the coins.

Douglas worked as an engineer. He performed consulting services for four different companies. He earned approximately $40,000 in each of the tax years involved; yet he reported for each year no more than $300 as tax owed. He submitted notices to his employers or clients advising them that he had taken a vow of poverty and that he would "be on the job as a Minister and Agent of [the Basic Bible] Church". These

---

5. Having encountered a problem with the Minnesota State Tax Court and having perceived generally negative attitudes in the community toward the Basic Bible Church, appellants changed the name of their organization to the American Fundamentalist Church and incorporated it as such. They also opened new bank accounts in the new name of the church and transferred title to their residence to it.

employers and clients, however, drew checks to Douglas individually for his services.

Appellants filed timely tax returns for the relevant tax years. They did not report any tax due on these returns. On March 13, 1984, the Commissioner issued a statutory notice of tax deficiency to appellants for the 1980 tax year. On May 1, 1984, the Commissioner issued a statutory notice of tax deficiency to Douglas for the 1979 and 1981 tax years. On October 22, 1984, the Commissioner issued a statutory notice of tax deficiency to Douglas for the 1982 tax year. Appellants challenged the Commissioner's assessments for the 1979,[6] 1980 and 1981 tax years by filing a joint petition with the Tax Court ("the 1980–1981 tax deficiency case"). Douglas filed a separate petition with the Tax Court challenging the Commissioner's assessment for the 1982 tax year ("the 1982 tax deficiency case"). The Tax Court consolidated these two cases for purposes of trial.

Appellants' position is that they are exempt from any federal income tax because they worked as agents of the churches and not as principals. Alternatively, they claim that they are entitled to a charitable deduction for all sums "transferred" to the churches. The Tax Court found that appellants received the income as principals and not as agents of the churches, that they maintained control over the sums transferred to the churches, and that they negligently and intentionally disregarded the rules and regulations of the IRS. Accordingly, the Court concluded that appellants' income is subject to federal income tax and that they are not entitled to any charitable deductions.

The Tax Court's decision determining that there is a deficiency in income tax and additions to tax under § 6653(a) due from appellants for the 1980 and 1981 tax years was entered on the docket in the 1980–1981 tax deficiency case on July 10, 1986. The Court's decision determining that there is a deficiency in income tax and additions to

tax under §§ 6651(a), 6653(a) and 6654 due from Douglas for the 1982 tax year was entered on the docket in the 1982 tax deficiency case on July 10, 1986.

On July 25, 1986, the Commissioner filed a motion to revise the decision entered in the 1980–1981 tax deficiency case. The Court granted this motion. On August 5, 1986, the Court entered an order vacating its original decision and entered a corrected decision in the the 1980–1981 tax deficiency case. Appellants took the instant appeal by filing a single notice of appeal on October 14, 1986.

## II.

We turn first to the threshold question of whether appellants' single notice of appeal filed October 14, 1986 conferred jurisdiction upon this Court to consider this appeal in the 1982 tax deficiency case as well as in the 1980–1981 tax deficiency case.

A party may obtain review of a Tax Court decision by filing a notice of appeal with the clerk of that court within 90 days of the entry of its decision. 26 U.S.C. § 7483 (1982); Fed.R.App.P. 13(a). If no notice of appeal has been filed upon the expiration of the time allowed to file such notice, the decision of the Tax Court becomes final. 26 U.S.C. § 7481(a)(1) (1982). If, however, a party files a timely motion to vacate or revise the Tax Court's decision, that motion terminates the running of time for appeal. Thereafter, the full time for appeal commences to run from the entry of an order disposing of the motion or the entry of the decision, whichever is later. Fed.R.App.P. 13(a).

■ Here, the Commissioner's motion to revise the Tax Court's decision in the 1980–1981 tax deficiency case terminated the running of the time for appeal from the order entered in that case. The time for appeal in that case did not commence until August 5, 1986, when the Tax Court entered its revised decision. Consequently,

---

6. The Tax Court found that the statute of limitations had run with respect to the Commissioner's claims regarding the 1979 tax year. That

part of the Tax Court's decision is not being challenged on the instant appeal.

appellants' notice of appeal from the Tax Court's decision in the 1980–1981 tax deficiency case effectively conferred jurisdiction upon this Court to consider that appeal.

■ The Commissioner's motion, however, did not affect the Tax Court's decision in the 1982 tax deficiency case, which was entered July 10, 1986. That motion did not terminate the time for appeal from that decision. Appellants' notice of appeal filed October 14, 1986 therefore was not timely as to the 1982 tax deficiency case, having been filed more than 90 days after the decision; and did not confer jurisdiction upon this Court to consider the appeal from that decision. *Jefferson Loan Co. v. Commissioner,* 249 F.2d 364 (8th Cir.1957). *Accord, Browder v. Director, Dep't of Corrections,* 434 U.S. 257, 271–72 (1978).

Appellants argue that the Tax Court's consolidation of the two cases for trial created a single action upon which only one judgment may be entered and from which only one appeal may be taken. Appellants misinterpret the law. The term "consolidation" can be used to describe three instances: "First, where several actions are combined into one and lose their separate identity and become a single action in which a single judgment is rendered; second, where all except one of several actions are stayed until one is tried, in which case the judgment in the one is conclusive as to the others; third, where several actions are ordered to be tried together but each retains its separate character and requires the entry of a separate judgment." *George v. Leonard,* 84 F.Supp. 205, 208 (E.D.S.C.), *rev'd on other grounds,* 178 F.2d 312 (8th Cir.1949), *cert. denied,* 339 U.S. 965 (1950). Clearly, the Tax Court here intended the third type of consolidation, since the opinion specifically states that separate orders are to be entered in the two cases.

The Supreme Court has held that consolidation is utilized as a matter of convenience and economy in administration, but it does not merge suits into a single action or change the rights of the parties. *Johnson v. Manhattan Railroad,* 289 U.S. 479 (1933). *See also Cole v. Schenley Indus.,* 563 F.2d 35, 38 (2d Cir.1977); *Greenberg v. Giannini,* 140 F.2d 550, 552 (2d Cir.1944) (L. Hand, J.). While it is true that parties may seek "true consolidation" so that the cases result in one judgment and one right to appeal, *Minnesota v. United States Steel Corp.,* 44 F.R.D. 559, 581 (D.Minn.1968), it is clear that the two cases from which the instant appeal was taken were not the result of a "true consolidation". Rather, the Tax Court entered separate orders and decisions in the two cases, thereby giving rise to separate rights of appeal.

We hold that appellants' notice of appeal conferred jurisdiction upon this Court to consider the appeal from the Tax Court's decision in the 1980–1981 tax deficiency case (No. 18580–84) but did not confer jurisdiction to consider the appeal from its decision entered in the 1982 tax deficiency case (No. 822–85). We therefore dismiss the instant appeal to the extent that it seeks review of the decision determining a deficiency in Douglas' federal income tax for the 1982 tax year and imposing additions to tax for that year under §§ 6651(a), 6653(a) and 6654 of the Internal Revenue Code.

### III.

■ At the commencement of the trial, appellants moved for a continuance for the purpose of conducting discovery as to whether the IRS discriminatorily enforces its facially neutral rule that one cannot avoid taxation of income by assigning the income to another entity. Finding that issue irrelevant to the case, the Tax Court denied the motion. We agree.

Appellants' claim before the Tax Court and on the instant appeal is that denominational preference is relevant to this case from a constitutional standpoint. We agree with the Tax Court that appellants' right to practice their religion has not been challenged and that this is not a First Amendment case. Rather, one of the objects of this case was to determine whether appellants had met the requirements of 26

U.S.C. §§ 170 [7] and 501(c)(3). [8] Appellants' claim is unfounded. *See Mone v. Commissioner*, 774 F.2d 570, 573 (2d Cir.1985).

We hold that the Tax Court correctly denied appellants' motion for a continuance on the ground that the issue of whether the IRS discriminatorily enforces its rule is irrelevant to this case.

### IV.

We turn next to the issue of whether appellants received the relevant income as principals or as agents of the churches. Appellants claim that they received the income as agents and not as principals. The Tax Court found that they received the income as principals and not as agents of the churches. We agree.

■■■ A basic principle of tax law is that income is taxable to the one who earns it. *United States v. Basye*, 410 U.S. 441, 449 (1973); *Commissioner v. Culbertson*, 337 U.S. 733, 739–40 (1949). It is likewise basic that a taxpayer is not relieved of his obligation to pay income tax on any income he earns when he transfers it or assigns it to another person or entity. *Basye, supra*, 410 U.S. at 449–51. If, however, one receives income as an agent for a principal, it is the income of the principal and not that of the agent. *Maryland Casualty Co. v. United States*, 251 U.S. 342, 345–48 (1920). Specifically, if a member of a religious order earns income as an agent of and on behalf of the order, and gives that money to the order pursuant to his vow of poverty, that sum becomes income to the order and the individual is not taxed on it. Conversely, if a member of a religious order earns income in his individual capacity and gives the money to the order pursuant to his vow of poverty, that

sum is income to him and is subject to federal income tax. *E.g., Schuster v. Commissioner*, 800 F.2d 672 (7th Cir.1986); *Fogarty v. United States*, 780 F.2d 1005 (Fed. Cir.1986).

In determining that appellants received the income as principals and not as agents of the churches, the Tax Court applied the test enunciated by the Second Circuit in *Mone v. Commissioner*, 774 F.2d 570 (2d Cir.1985): "To prove assignment of income on an agency theory, the taxpayers ... must show that a contractual relationship existed between their secular employers and the religious order, and that the religious order controlled or restricted the taxpayers' use of the money purportedly turned over to the order." *Id.* at 573. *Accord, Pollard v. Commissioner*, 786 F.2d 1063 (11th Cir.1986). The Tax Court concluded that, although it was not clear whether any of appellants' secular employers actually contracted with the churches, it was clear that the churches did not control or restrict appellants' use of the money purportedly turned over to the churches.

■■ Appellants do not dispute the fact that the churches did not control or restrict appellants' use of the money. Rather, they advance two arguments. First, they argue that, because the directives of their "ecclesiastical superiors" required them to secure secular employment, they earned the income in the exercise of their ministry, within the meaning of the IRS regulations. Second, they argue that the application of the *Mone* standard for determining agency constitutes a direct violation of both the Establishment Clause and the Free Exercise Clause of the First Amendment be-

---

**7.** At the time of this dispute, § 170 in relevant part provided:

"There shall be allowed as a deduction any charitable contribution ... payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary."

**8.** At the time of this dispute, § 501(c)(3) in relevant part provided:

"The following organizations are referred to in subsection (a) [exempt from taxation]: Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable ... purposes, ... no part of the net earnings of which inures to the benefit of any private shareholder or individual...."

cause such a strict standard is not applied to secular institutions. We find both arguments to be totally without merit.

In making their first argument, appellants attempt to distinguish their case from other cases where courts have rejected similar claims. *E.g., Davis v. Commissioner,* 81 T.C. 806 (1983), *aff'd mem.,* 767 F.2d 931 (9th Cir.1985); *Stephenson v. Commissioner,* 79 T.C. 995 (1982), *aff'd,* 748 F.2d 331 (6th Cir.1984); *McGahen v. Commissioner,* 76 T.C. 468 (1981), *aff'd mem.,* 720 F.2d 664 (3d Cir.1983). Appellants' distinctions are frivolous. As the Tax Court observed, even though appellants were meticulous in organizing and operating their churches, giving rise to the appearance that their religious doctrines required them to obtain secular employment, and they did not control the money purportedly turned over to the churches, the fact remains that appellants have failed to meet the agency standard and to fulfill the requirements for an exemption under the Internal Revenue Code.

In making their second argument, appellants cite various revenue rulings which they claim apply less stringent definitions of agency to secular institutions. They argue that this preference in favor of nonreligious organizations violates the First Amendment, citing *Widmar v. Vincent,* 454 U.S. 263 (1981). Appellants misconstrue *Widmar.* There, the Supreme Court found that the state university's policy of excluding religious groups from holding meetings at university facilities violated the Free Speech Clause of the First Amendment. The Court reiterated the three-prong test for determining whether a policy has avoided offending the Establishment Clause: (1) it must have a secular legislative purpose; (2) its principal or primary effect must be one that neither advances nor inhibits religion, and (3) it must not foster "an excessive government entanglement with religion." *Id.* at 271, 102 S.Ct. at 275 (citing *Lemon v. Kurtzman,* 403 U.S. 602, 612–13 (1971)).[9] Clearly, ap-

pellants have not established a violation of the Establishment Clause. Nor have they advanced any Free Exercise argument.

We hold that appellants received the income as principals and not as agents of the churches and that therefore such income was not exempt from federal income taxation.

## V.

This brings us to the issue of whether appellants were entitled to charitable deductions for the income they purportedly transferred to the churches. The Tax Court held that they were not entitled to any such deductions. We agree.

█ In order for appellants to have been entitled to a tax deduction for the sums they gave to the churches, they would have had to prove that the churches were organized and operated exclusively for religious or charitable purposes and that no part of the sums contributed inured to the benefit of any private shareholder or individual. 26 U.S.C. § 170(c)(2)(B) and (C); *Welch v. Helvering,* 290 U.S. 111, 115 (1933) (Commissioner's determinations are presumed correct; petitioner has burden of proving him wrong). Appellants contend that the evidence at trial established that they met these standards. The Tax Court, however, found that the evidence clearly established that appellants did not meet these standards.

█ In concluding that appellants were not entitled to any charitable deductions, the Tax Court found:

"Although [appellants] in this case were more meticulous in their execution of pro forma and other documents and in organizing and operating their 'church,' it is abundantly clear that substantially all of the 'earnings' of the 'church' inured to their benefit and that of their family. [Douglas] caused it to, in form, appear that he had no control over the 'church'

**9.** For a scholarly discussion of this test, see Scheidemantle, *Political Entanglement as an Independent Test of Constitutionality Under the* *Establishment Clause,* 52 Fordham L.Rev. 1209 (1984).

funds or bank accounts, but in reality he retained and exercised control over all money and property involved.... All of the authority that [Douglas] contends was outside his control was simply transferred to [his] close personal female friend with whom [he] had become more familiar after his wife departed for California.... Nothing essentially changed in the source and nature of the payment of [appellants'] personal living expenses other than the execution of pro forma mail-order church-type documents and changes in the designated name on the bank account from which expenses were paid. Even though the wages and income of [appellants] were moved through an account which was denominated in the name of a church, payments from the account or from cash on hand were almost exclusively for personal living expenses of [appellants'] family . . . ."

We will not set aside such findings of fact unless clearly erroneous. *Cf.* Fed.R.Civ.P. 52(a). There is a strong presumption in favor of the trial court's findings of fact. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–81 (1985). We find that the record is replete with evidence to support these findings as well as the court's conclusion that appellants failed to prove that they satisfied the standards of the IRS for a charitable contribution.

We hold that the Tax Court correctly held that appellants were not entitled to any charitable deductions for any amounts transferred to either of the churches.

### VI.

The Tax Court held that Douglas' deficiency in income tax for the 1981 tax year was an underpayment due to negligence and intentional disregard of the rules and

regulations within the meaning of § 6653(a)(1); [10] accordingly, it imposed an addition to tax under § 6653(a)(2).[11] The court also ordered an addition to tax under § 6653(a) for the 1980 tax year. We agree.

Appellants argue that these penalties were not appropriate because they took a position on a controversial issue in good faith and conscientiously sought outside legal advice on all pertinent matters. The Commissioner's assessment of additions to tax, however, are entitled to a presumption of correctness and appellants bear the burden of proving that such determinations were improper. *Pollard v. Commissioner,* 786 F.2d 1063, 1067 (11th Cir.1986). Reliance on legal advice does not constitute the required proof. *Id.*

Moreover, this cannot be considered a controversial issue in light of the number of similar cases where courts have reached the same conclusions reached by the Tax Court here. As the Tax Court observed, "[a]lthough [appellants] have created a more complete or elaborate facade in this instance, we believe that people with [appellants'] education and intelligence must have known that they could not avoid tax or deduct personal or family expenses in the manner herein accomplished."

We hold that the imposition of additions to tax under § 6653(a) was proper.

### VII.

The Commissioner urges us to assess sanctions against appellants. The Federal Rules of Appellate Procedure authorize us to award "just damages and single and double costs to the appellee" when an appeal is frivolous. Fed.R.App.P. 38. We find that such sanctions are appropriate here. "Not only have the courts

---

**10.** At the time of this dispute, § 6653(a)(1) in relevant part provided:

"If any part of any underpayment ... is due to negligence or intentional disregard of rules or regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment."

**11.** At the time of this dispute, § 6653(a)(2) in relevant part provided:

"There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601—(A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1)".

repeatedly rejected arguments similar to those offered by appellants, but they have imposed sanctions for frivolous [appeals] in precisely this sort of case. *See, e.g., [Mone v. Commissioner,* 774 F.2d 570, 575–76 (2d Cir.1985)]." *Pollard, supra,* 786 F.2d at 1067.

## VIII.

To summarize:

We dismiss for lack of jurisdiction the appeal from the Tax Court's decision determining a deficiency in Douglas' federal income tax for the 1982 tax year and imposing additions to tax under §§ 6651(a), 6653(a) and 6654.

In the 1980–1981 tax deficiency case, we hold that the Tax Court properly denied appellants' motion for a continuance on the ground that the issue of whether the IRS discriminatorily enforces its rules is irrelevant. We also hold that appellants received the relevant income as principals and not as agents of the churches because the churches did not control appellants' use of the funds purportedly turned over to them and that therefore these sums are not exempt from federal income taxation. We further hold that appellants are not entitled to any charitable deductions because part of the sums given to the churches inured to the benefits of appellants and the members of their family. We further hold that the Tax Court correctly sustained the Commissioner's determination of deficiencies in appellants' income tax for the 1980 and 1981 tax years and that the additions to tax imposed under § 6653(a) are appropriate. Finally, we direct appellants to pay to appellee double costs and $5,000 attorneys' fees (damages) in this frivolous appeal.

Dismissed in part and affirmed in part, with double costs and $5,000 attorneys' fees (damages) assessed against appellants in this frivolous appeal.