**EDISON HOMES, INC., formerly
Ardmor, Inc., Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Appellee.**

No. 89–1708.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1990.

Decided May 17, 1990.

Rehearing and Rehearing En Banc
Denied July 9, 1990.

Jack S. Nordby, Minneapolis, Minn., for appellant.

Patricia M. Bowman, Washington, D.C., for appellee.

Before LAY, Chief Judge, BEAM, Circuit Judge and WOODS, District Judge.*

BEAM, Circuit Judge.

Edison Homes, Inc., taxpayer, appeals from a judgment entered by the United States Tax Court upholding a deficiency in its 1981 income tax payments. The Commissioner disallowed taxpayer's deduction of $528,024 for an addition to its bad debt reserve under 26 U.S.C. § 166(f) (1982),[1] and assessed a tax deficiency of $251,665. The Commissioner also assessed Edison Homes with an addition to tax for negligence, pursuant to 26 U.S.C. § 6653(a) (1982). The tax court upheld the Commissioner's determination that taxpayer had not met its burden of proving that the Commissioner's disallowance of the deduction was unreasonable, or that the Commissioner's assessment of a penalty for negligence was improper. We affirm.

## I. BACKGROUND

Edison Homes, Inc. is a dealer in new and used mobile homes. It began business

---

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas.

1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as in effect during 1981, the taxable year in question.

in 1972, and has since done business under several names: Oronco Estates, Inc.; Ardmor, Inc.; and Edison Homes, Inc. Gerald Toberman has been president of Edison Homes since 1972, and its sole shareholders are his children, Barbara and William.[2]

As part of its business of selling new and used mobile homes, Edison Homes financed its sales through General Electric Credit Corporation, GECC. By the terms of various agreements, GECC purchased the accounts generated by the sale or lease of a mobile home. In the event of default by the buyer, Edison Homes remained liable to GECC for the account balance, less unearned finance charges. Toberman personally guaranteed all accounts.

Edison Homes based its addition to the bad debt reserve on all outstanding past due accounts with GECC. Edison Homes claims that its recourse liability on these accounts was over $23 million, and the record substantiates this figure. GECC maintains its accounts with Edison Homes under four separate dealer numbers. Dealer number 7036 showed a balance of $11,-817,229.90; number 7025 of $7,688,293; number 7026 of $1,030,658; and number 0315 of $2,716,751.17. These figures, however, include both principal and interest; the amount of principal alone is uncertain.[3] Testimony at trial suggested that the principal due on these dealer numbers was probably about one half of the total balance.

As an accrual basis taxpayer, Edison Homes elected, in its 1981 return, to take a deduction for an addition to its bad debt reserve as permitted by section 166(f). Its 1981 return was prepared by Hal Gensler, a CPA and tax preparer with a Minneapolis accounting firm. Gensler prepared the return based upon information supplied to him by Edison Homes. Since 1981 was a poor economic year, with high interest rates and growing unemployment, Edison Homes anticipated an increasing number of defaults and repossessions. It, therefore, calculated an addition to its current bad debt reserve. At the beginning of 1981, the reserve contained $246,128. Edison Homes calculated an addition by taking 3.25% of its total outstanding liability on its accounts with GECC, $23,820,059. This calculation produced a reserve of $774,152. Thus, less the reserve balance at the beginning of 1981, Edison Homes added $528,024 to its bad debt reserve, and claimed a deduction for that amount.

The Commissioner found that Edison Homes improperly calculated the addition to reserve. The Commissioner found that Edison Homes based its calculations, in part, on its debt obligations to GECC arising from transactions other than the sale of tangible personal property as required by section 166(f)(1)(A), and, denied the deduction in full. The Commissioner also found that Edison Homes had been negligent in preparing its 1981 return. Thus, the Commissioner assessed a deficiency of $251,665, and an addition to tax, as a penalty, of $12,583 (five percent of the deficiency), plus fifty percent of the interest due on $251,665. See 26 U.S.C. § 6653(a)(2).

The case was tried to the tax court on May 21, 1987, and decision was entered on February 3, 1989. The tax court held that Edison Homes failed to meet its heavy burden of proving that the Commissioner had abused his discretion in disallowing the claimed deduction for the bad debt reserve. *Edison Homes, Inc. v. Commissioner*, 56

---

2. Toberman testified that while his business has had three corporate names, it has been incorporated only once in the State of Minnesota, and that Oronco, Ardmor and Edison Homes are "all one and the same." Trial Transcript, at 53, 73. The business also used the name "Toberman Companies," although Toberman Companies was not a separate corporate entity and had no corporate officers. *Id.* at 80. The name "Toberman Companies" was apparently used in transactions involving used mobile homes. *See Edison Homes, Inc. v. Commissioner*, 56 T.C.M. (CCH) 203, 204 (1988).

3. The amount of principal was established at trial for two of the accounts. Principal for dealer number 7036 amounted to $5,540,883.68 and to $863,163.43 for dealer number 0315. No figures were available for the other two dealer numbers. This distinction is important in determining whether the addition to bad debt reserve was reasonable, because Edison Homes, by agreement with GECC, was liable only for principal. *See infra* note 7.

T.C.M. (CCH) 203, 207 (1988). Specifically, Edison Homes failed, according to the tax court, to prove that its reserve calculations were based only on debt obligations arising from sales, as required by section 166(f)(1)(A). Given several deals in the record which resembled brokered transactions more than sales, the tax court made a finding that Edison Homes acted as broker, and not as seller, as to *all* used mobile homes. *Id.* Based upon this failure of proof by Edison Homes, the tax court was unable to segregate actual sales from brokered transactions, and thus to determine whether the calculation was reasonable. Therefore, the tax court could not say that the Commissioner's disallowance was an abuse of discretion. *Id.* The tax court also held that Edison Homes had been negligent in preparing its 1981 return. *Id.* at 207–08. Accordingly, the tax court found that the Commissioner properly assessed a penalty for negligence.

## II. DISCUSSION

■ Section 166 allows a taxpayer to take a deduction for losses incurred because of bad debts. Section 166(a) provides that a taxpayer may take a deduction for a debt which becomes worthless within the taxable year. In the alternative, sections 166(c) and (f)[4] allow a taxpayer to take a deduction for a reasonable addition to a reserve established to cover future bad debts.[5] The statutory scheme clearly provides that the deduction for an addition to reserve is taken *in lieu of* a specific deduction for an actually worthless debt, *see Beneficial Corp. & Subsidiaries v. United States*, 814 F.2d 1570, 1571 (Fed.Cir.1987), and is, therefore, subject to the discretion of the Commissioner. Since sections 166(c) and (f) allow a deduction for a loss which has not yet occurred, they afford a tax preference to the taxpayer; the taxpayer must otherwise take a deduction only when the loss has actually occurred. *See Thompson v. Commissioner*, 761 F.2d 259, 261 (6th Cir.1985). The reserve can only estimate the amount necessary to cover future losses on current debts. *See Roth Steel Tube Co. v. Commissioner*, 620 F.2d 1176, 1179 (6th Cir.1980). By choosing the reserve method the taxpayer subjects himself to the discretion of the Commissioner. *Beneficial Corp.*, 814 F.2d at 1573.

■ The United States Supreme Court considered section 166(c) in *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979). In *Thor*, the Court emphasized the statutory grant of discretion to the Commissioner. The Supreme Court held that the Commissioner's determination of a reasonable addition "must be sustained unless the taxpayer proves that the Commissioner abused his discretion. The taxpayer is said to bear a 'heavy burden' in this respect. He must show not only that his own computation is reasonable but also that the Commissioner's computation is unreasonable and arbitrary." *Id.* at 548, 99 S.Ct. at 789 (footnotes omitted). In effect, the statutory grant of discretion limits judicial review of the Commissioner's determination, *Roth Steel*, 620 F.2d at 1179, and the Commissioner's determination can be found unreasonable only if the taxpayer proves an abuse of discretion. *See Dixie Furniture*

---

**4.** Both sections were repealed effective December 31, 1986. Tax Reform Act of 1986, Pub.L. No. 99–514, Title VIII, §§ 805(a) and (b), 100 Stat. 2361 (1986).

**5.** Section 166(c) provides:
In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary) a deduction for a reasonable addition to a reserve for bad debts.
26 U.S.C. § 166(c).
Section 166(f) is a particular application of section 166(c), providing for a reserve for certain guaranteed debt obligations. Section 166(f) provides:
(1) Allowance of deduction

In the case of a taxpayer who is a dealer in property, in lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary) for any taxable year ending after October 21, 1965, a deduction—
(A) for a reasonable addition to a reserve for bad debts which may arise out of his liability as a guarantor, endorser, or indemnitor of debt obligations arising out of the sale by him of real property or tangible personal property ... in the ordinary course of his trade or business.
26 U.S.C. § 166(f)(1).

*Co. v. Commissioner,* 390 F.2d 139, 141 (8th Cir.1968); *Beneficial Corp.,* 814 F.2d at 1572; *Thompson,* 761 F.2d at 261. Moreover, the focus is not solely on the reasonableness of the taxpayer's calculations. That is, that the taxpayer's calculations are reasonable does not necessarily mean that the Commissioner's are unreasonable. *Malone & Hyde, Inc. v. United States,* 568 F.2d 474, 477 (6th Cir.1978).

■ We cannot agree with Edison Homes that the Commissioner's disallowance of the deduction in this case was unreasonable. On appeal, Edison Homes argues, essentially, that the Commissioner's calculations were unreasonable because its own were reasonable. Given the economic conditions of 1981, and, in hindsight, its actual losses for 1981, Edison Homes argues that its addition to reserve was more than reasonable.[6] Edison Homes does not dispute that it bears a heavy burden in proving that the Commissioner abused his discretion. Nor does Edison Homes argue that its addition can be based on obligations other than those arising from the sale of personal property as required by section 166(f)(1)(A). Because Edison Homes has not established that its calculations were based *only* on debt obligations arising from the sale of mobile homes, it has not proven that its addition was reasonable, let alone that the disallowance was an abuse of discretion by the Commissioner.

As indicated, section 166(f) requires that a reserve be based only on "debt obligations arising out of the *sale* ... of ... tangible personal property." 26 U.S.C. § 166(f)(1)(A) (emphasis added). Furthermore, the statute specifically excludes all debt obligations not arising from a sale: "Except as provided in paragraph (1), no deduction shall be allowed to a taxpayer for any addition to a reserve for bad debts which may arise out of his liability as guarantor, endorser, or indemnitor of debt obligations." *Id.* § 166(f)(2). Evidence presented at trial revealed that the $23

million debt obligation on which Edison Homes based its calculations contained obligations arising from brokered transactions in which Edison Homes was not the seller.

The record contains evidence of several transactions which Edison Homes referred to as "bird-dog" sales. Toberman testified that Edison Homes used "bird-dog" salespeople who would find a home and a customer, and then involve Edison Homes to arrange financing. Trial Transcript at 69–70. As explained by Toberman: "We worked with several people that would look at homes for us, and if they were able to find a customer, we would just do a joint venture on a sale with them. And they would get a commission from us." *Id.* at 70. One such transaction, for example, was revealed by the testimony of James Freeman, the regional manager for GECC in Minnesota for part of 1981. Freeman testified that Edison Homes arranged financing through GECC, but that Edison Homes was not actually the seller of the mobile home. In some documents associated with this transaction, Walter and Madelene Kersten were listed as buyers, and Terry and Nancy Scruggs as sellers. *Id.* at 135–36; exhibit AO. In others, Ardmor, Inc. was listed as seller. *Id.* at 139–40. Freeman, however, suggested that listing Ardmor, Inc. as seller did not accurately portray the transaction. He described this transaction as representative of others and stated: "And I became concerned as to using a standard retail contract to handle this type of transaction, versus a brokerage contract. Particularly where the title did not pass to the person signing as seller on the retail installment contract, the title never passed to their hands." *Id.* at 141. Toberman testified to a similar transaction involving a sale by Ronald and Gayle Myhre to James Smith. *Id.* at 81–83; exhibit 31. As with the Kersten transaction, the record contains a document, on Toberman Companies letterhead, which states that: "Ardmor, Inc. is the Agent for placing financing with a lender with respect to

---

**6.** In *Thor,* the Supreme Court defined a "reasonable addition" as "the amount necessary to bring the reserve balance up to the level that can be expected to cover losses properly anticipated on debts outstanding at the end of the tax year." *Thor,* 439 U.S. at 546, 99 S.Ct. at 788.

the purchase of your mobile home from your dealer." Exhibit 31. Thus, various documents portrayed Ardmor, Inc. acting in different capacities. In the opinion of Freeman, these transactions were simply not sales. Trial Transcript at 142.

Based on the evidence of these and similar transactions, the tax court found that Edison Homes "acted merely as a mortgage broker (and possibly an escrow agent) for the sale of used mobile homes." *Edison Homes,* 56 T.C.M. (CCH) at 207. Hence, the tax court found that "an unascertainable portion of the $23 million proffered by petitioner as a basis for its dealer reserve represents accounts which did not arise from sales by petitioner in the ordinary course of its business." *Id.* Edison Homes does not challenge this finding.

While counsel did state at oral argument that there is no evidence that these transactions were not sales, that assertion cannot refute the specific finding of the tax court. Indeed, it merely misstates the burden of proof. Nor is the argument that these transactions were only a few out of hundreds persuasive. The tax court found that Edison Homes acted as a broker in the case of *all* used mobile homes, and Edison Homes admitted at oral argument that many more of these transactions could be hidden in the $23 million figure on which it based its calculations. Given that the burden of proof is on Edison Homes to prove that its calculations were based only on debt obligations arising from sales, and that Edison Homes has failed to do so, we cannot say that the Commissioner's disal-

lowance of the deduction was unreasonable.[7]

Edison Homes also argues that the Commissioner's assessment of a penalty for negligence under section 6653(a) was improper.[8] The tax court found, however, that the deficiency in taxes paid in 1981 was due to negligence. We agree.

■ Edison Homes also bears the burden of proving that the Commissioner's assessment of a penalty for negligence was improper. "The Commissioner's assessment of additions to tax, however, are entitled to a presumption of correctness and appellants bear the burden of proving that such determinations were improper." *Page v. Commissioner,* 823 F.2d 1263, 1272 (8th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988). The tax court's finding of negligence is subject to a clearly erroneous standard of review. *Forseth v. Commissioner,* 845 F.2d 746, 749 (7th Cir.1988).

■ Edison Homes argues that it was not negligent because it merely interpreted a "rather obscure provision of law," brief for appellant at 36, differently than did the Commissioner. As the tax court held, however, section 166(f) is unambiguous. *Edison Homes,* 56 T.C.M. (CCH) at 206. Section 166(f) clearly requires that any addition to reserve be based only on debt obligations arising from sales. Yet Edison Homes included in its calculations obligations arising from transactions in which it never had or transferred title to the

---

**7.** Even if Edison Homes had proved that its calculations were based only on debt obligations arising from sales, it would still be unable to prove that its calculations were reasonable. As the tax court found, the $23 million figure "does not represent petitioner's true potential liability to GECC." *Edison Homes,* 56 T.C.M. (CCH) at 207. The $23 million figure includes interest charges for which Edison Homes is not liable. As indicated, *supra* note 3, the record simply does not reveal principal-only figures for all dealer numbers with GECC. While Edison Homes tries to argue that its calculations would be reasonable even if its liability were only half of the $23 million, this argument again misstates the burden of proof.

**8.** Section 6653(a) provides:

(1) If any part of any underpayment ... of any tax imposed ... is due to negligence or intentional disregard of rules or regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

(2) There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601—

(A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1).

26 U.S.C. § 6653.

mobile homes involved. We disagree that the law is unsettled as to whether such a transaction could in any way be considered a sale for purposes of section 166(f).

Alternatively, Edison Homes argues that it cannot be negligent because it relied on its accountant to prepare the 1981 return. Its accountant, however, merely calculated the reserve based on figures supplied by Edison Homes. Trial Transcript at 90–91, 95–97. As we held in *Page*, reliance on legal advice does not constitute proof that the Commissioner's negligence determination was improper. *Page*, 823 F.2d at 1272. *Cf. Scallen v. Commissioner*, 877 F.2d 1364, 1371 (8th Cir.1989) ("A taxpayer may not rely on errors of his tax preparer as a defense to a charge of fraud if the taxpayer failed to provide the preparer with the proper documentation correctly to prepare the return.") Given the state of this record, we can say without difficulty that the Commissioner's assessments for negligence were proper.

## III. CONCLUSION

Edison Homes bore a heavy burden in this case to prove that the Commissioner abused his discretion in disallowing the deduction for an addition to reserve. Edison Homes has fallen well short of meeting this burden, for, given the tax court's finding of brokered transactions, Edison Homes is unable to prove even that its own calculations were reasonable, let alone that the Commissioner's were unreasonable. For the reasons stated, the decision of the tax court is affirmed.