Douglas PAGE, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 94–2081.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1995.

Decided July 12, 1995.

Kenneth Keate, St. Paul, MN, argued, for appellant

Janet Arlene Bradley, Washington, DC, argued (Loretta C. Argrett, Asst. Atty. Gen., Gary R. Allen, Charles E. Brookhart and Janet A. Bradley, Dept. of Justice Attys. of Washington, DC, on the brief), for appellee.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Douglas A. Page appeals from the tax court's[1] determination of deficiencies in his income tax for 1984 and 1985. The Commissioner reconstructed Page's income using the bank-deposits-and-cash-expenditures method. Page argued that his relationship to his "church" altered his tax liability. The tax court upheld the Commissioner's determination that the church was Page's alter ego and that Page failed to correctly report his income and pay taxes. Page now argues that the tax court erred in including in Page's gross income all deposits to the church's bank account, the proceeds of the sale of an airplane, and Page's child support payments; in disallowing his alleged charitable contributions to the church and a parsonage allowance; and in disallowing Page's election not to be subject to self-employment tax. He also argues error in the tax court's assessment of penalties for filing a frivolous petition.[2] We affirm the judgment of the tax court in all respects.

At the time this petition was filed, Page resided at 15817 Valley View Road in Eden Prairie, Minnesota, a property he purchased in 1974. During 1978, Page, his wife, Carolyn, and Jon Frayne formed Chapter 8035 of the Basic Bible Church of America. Page purportedly took a vow of poverty and irrevocably transferred his property to the church. Shortly thereafter, Page and his wife transferred the Valley View property to themselves in joint tenancy with a right of survivorship for the expressed benefit of Chapter 8035. Chapter 8035 tried unsuccessfully to obtain exemption from Minnesota real estate taxes or to obtain tax exempt status.

In 1980, Page and others converted Chapter 8035 into the American Fundamentalist Church, which was unaffiliated with any other church or denomination, and Page received a Certificate of Ordination. In mid-1980, Page, Carolyn, and Frayne executed a "Certificate of Incorporation" for the new church, and Frayne amended it a few months later, designating the location of the church

---

1. The Honorable Joel Gerber, United States Tax Court Judge.

2. Page complains of mathematical errors in the assessment, but fails to provide us with sufficient information to decide the issue.

as 15187 Valley View Road. The new church also sought exemption from real estate taxes and was denied.

In 1984, Page and his wife divorced, and Page paid child support of $225 per month for nine months per year through traveler's checks, money orders, and checks from the personal checking account of Kathleen Grossinger, a trustee of the new church.

Page previously contested his tax liability for 1979 through 1982, arguing that his relationship to his "church" would allow avoidance of tax on income from his personal services. *Page v. Commissioner,* 823 F.2d 1263 (8th Cir.1987) (*Page I* ), cert. denied, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988). In *Page I,* we held that Page was not exempt from tax on income from secular employment because "the churches did not control or restrict [his] use of the money purportedly turned over to the churches." *Id.* at 1270. We disallowed charitable deductions for the income Page purportedly transferred to the churches because he did not prove "that the churches were organized and operated exclusively for religious or charitable purposes and that no part of the sums contributed inured to the benefit of any private shareholder or individual." *Id.* at 1271–72. We upheld the tax court's additions to tax and sanctioned Page for bringing a frivolous appeal. *Id.* at 1272–73.

The current controversy involves Page's tax liability for the years 1984 and 1985. During that time, Page, Jerold Peterson, and Frayne shared the "ministerial duties" of the church. Page was compensated, but Peterson and Frayne were not. The trustees of the church met monthly and discussed at length tax matters, tax and nontax litigation, hiring lawyers, and plans for "retaliation" against government officials.[3]

Page did not maintain a checking account in his name in 1984 and 1985. Starting in 1980, the church maintained a checking account with signature authority in Page and his wife. After their separation, Grossinger was added and, later, Peterson.

The church kept a "cash fund" in two lockboxes: one usually held $400–$500 and was kept at the Valley View property; the other held more cash and was kept at various locations. Grossinger purchased food for Page and his family with cash from the fund. Expenses Page incurred in his consulting activity as an ordnance engineer were paid in cash, with the exception of a $116.35 check in 1984.

During 1984 and 1985, Page attempted to structure his employment relationship with his clients so that the clients contracted with the church and Page acted as the church's agent, thereby avoiding tax liability. In 1983, while doing consulting work in Pennsylvania, Page opened another bank account in the name of "AFC, Inc." in Lancaster, Pennsylvania, and used the account to pay his living expenses until he completed his work there.

During this time, Page had no automobiles registered in his name, but the church held title or registration for four vehicles. Page used these vehicles, and their operating expenses were largely paid from the church's cash fund. Monthly utility bills and maintenance costs for the Valley View property were paid from the church accounts. In 1983, the balance on the indebtedness for the Valley View property was paid, in substantial part by a loan of $6,000 from Page's mother. The church, through Page and Grossinger, executed a note for the loan. The note was secured by several antiques Page purchased prior to 1980 and supposedly transferred to the Chapter 8035 church after his vow of poverty. During 1984, regular payments totalling $5,064.92 were paid to Page's mother from the church's account. During 1985, a check for $750.14 was paid to Page's mother from the church's account.

When the church's efforts to obtain tax exemption for the Valley View property failed, taxes in the amount of $13,718.63 were

---

**3.** An entry in the minutes for the meeting in July of 1984 stated:

> Rev. Page gave a financial report and discussed plans to phase out all bank accounts in order to assure complete financial privacy for the church and to prevent the feds from using financial data found in accounts as a means or basis for illegal and unlawful assessment of church members.

assessed and paid during May 1984. Payment was made by a $12,200 check deposited into the church account and a loan of $1,519.63 from Grossinger. The check allegedly came from the sale of a Cessna Model 177 airplane which Page purchased in 1973 for $9,450, and purportedly transferred to the Chapter 8035 church in 1980. During 1984 and 1985, expenses for the plane's storage, maintenance, and insurance were paid from the new church's account. Page was the only person associated with the new church who could fly the plane.

During 1984 and 1985, deposits to the church account totalled $52,116.86, and $34,046.68, respectively. In the two years, Page concedes that deposits totalling $8,822.82 and $6,873.50, respectively, identifiably derived from unreported self-employment income and payment of expenses for consulting services. Other deposits were made from unidentified checks and money orders exceeding $15,000, and from currency and unidentified wire transfers exceeding $55,000. The Commissioner determined that all of these amounts represented income to petitioner.

Page filed federal income tax returns for the 1984 and 1985 tax years and reported gross income of $5,270 (stipend of $5,150 from the church plus $120 for the use of the church's automobiles) and $5,525 (stipend of $5,400 from the church and $125 for the use of the church's automobiles). Page reported no other income or deductions. His 1984 return reflected no tax due, and his 1985 return reflected a $239 tax liability. He claimed estimated payments of $2,301 in both years, and overpayments or refunds for each of the years. The tax court found that in neither year did Page file declarations of estimated tax (Forms 1040 ES), make any deposits of estimated tax, or have tax withheld from his earnings.

The Commissioner reconstructed Page's income for 1984 and 1985 by tabulating all deposits to the church's account, reducing that amount by nontaxable amounts, and adding to that amount Page's child support payments under the divorce decree. The tax court held that the Commissioner was enti-

tled to use a reconstruction method because Page had inadequate books and records due to his attempts to secrete his income and to "retaliate" against the taxing authorities. *Page v. Commissioner,* No. 3670–91, T.C. Memo. 1993–398, slip op. at 17–18, 1993 WL 326845 (August 30, 1993). The court held that the inadequacy of Page's records, coupled with his concession of a source of unreported income,[4] placed upon Page both the burden of going forward and the ultimate burden of proving erroneous the Commissioner's determination. *Id.* at 18.

The tax court rejected Page's arguments that a 1984 deposit of $12,200 represented the sales proceeds of the church's airplane and that a $10,010 wire transfer in the same year was a loan from his mother. *Id.* Although Page contended that he contributed the plane to the Chapter 8035 church, the tax court found that the plane inexplicably appeared at Page's new church when he disassociated himself from Chapter 8035. *Id.* at 18–19. The plane was then purportedly sold to Trustee Frayne, who could not fly, at a time and price corresponding with the Minnesota real estate tax assessment on the Valley View property. *Id.* at 19. After the sale, the church continued to pay the plane's expenses. *Id.* The tax court held that these facts, together with Page's other tax avoidance schemes, supported their conclusions that neither Page nor his church actually sold the plane to Frayne and that the $12,200 did not result from any such sale. *Id.*

Page offered no testimony besides his own to support his contention that the $10,010 wire transfer was a loan from his mother. The tax court noted that Page's mother loaned $6000 in 1983 to pay off the Valley View property, evidenced by a note providing for security, interest, and a monthly payment schedule. *Id.* In light of these previous formalities, the court held incredible Page's testimony that the $10,010 transfer was a loan from the same party with no note, security, interest, or payment schedule. *Id.* at 19–20.

---

4. According to his counsel, "Page admits that he improperly failed to include in his income funds he received as an expert witness and deposited directly into the [church's] account."

The court also rejected Page's testimony that the unidentified currency deposits, totalling approximately $18,000 in 1984 and $27,000 in 1985, were contributions to the church from members or other contributors. *Id.* at 20. The tax court found that deposits of checks from consulting activity decreased dramatically after mid–1984, and virtually ceased in 1985. *Id.* The tax court held that Page had not proven erroneous the Commissioner's determination and reconstruction of his income, and, accordingly, the deposits (excepting deposits from identifiable nontaxable sources) and child support payments constituted self-employment income to Page. *Id.* Accordingly, the tax court upheld the Commissioner's determination that the deposits were subject to self-employment tax and rejected Page's argument that his reported stipend was not subject to self-employment tax under 26 U.S.C. § 1402(e).[5] *Id.* at 24–25. The court so held because Page failed to prove either that he had received approval for exempt status or that the stipend resulted solely from his performance of ministerial services. *Id.* at 25.

The Commissioner conceded the deductibility of real estate taxes, interest on loans, and certain legal fees. *Id.* at 26. The tax court found that Page's taxes were deficient for the years in question and that additions to tax were required under sections 6653(a)(1)–(2) (negligence), 6661 (substantial understatement of tax) and 6621(c) (interest rate of 120% of the underpayment rate). *Page v. Commissioner,* No. 3670–91 (T.C. Jan. 19, 1994). The court found "substantial private inurement," *Page,* T.C. Memo. 1993–398 at 30 n. 7, and disallowed Page any deduction for his purported charitable contributions. *Id.* at 22 n. 5. The court found no meaningful difference between this case and *Page I* and assessed a penalty under Section 6673 for institution of a frivolous proceeding. *Id.* at 33–34.

Page argues that the tax court erred in: (1) including in Page's gross income all deposits to the church's bank account, the proceeds of the sale of the airplane, and Page's

child support payments; (2) disallowing adjustments to his income for charitable contributions to the church and a parsonage allowance for the Valley View property; (3) disallowing Page's election not to be subject to self-employment tax; and (4) assessing a penalty for filing a frivolous petition.

■ We review de novo the tax court's legal determination that Page had the burden of proving error in the Commissioner's deficiency determination. We review for clear error the tax court's factual determination that Page failed to meet this burden of proof. *See Sargent v. Commissioner,* 929 F.2d 1252, 1254 (8th Cir.1991).

■ The tax court correctly held that Page had the burden of proving error in the Commissioner's determination of deficiency. *See* T.C. Rule 142(a). The Commissioner's assessment of a tax deficiency is normally entitled to a presumption of correctness. *Caulfield v. Commissioner,* 33 F.3d 991, 993 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1358, 131 L.Ed.2d 216 (1995). The presumption fails where the Commissioner makes the assessment without any foundation or supporting evidence. *Dodge v. Commissioner,* 981 F.2d 350, 353 (8th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993). The taxpayer bears the burden of proving that the assessment is arbitrary or erroneous. *Day v. Commissioner,* 975 F.2d 534, 537 (8th Cir.1992).

■ Where a taxpayer's method of accounting does not accurately reflect income, the Commissioner may determine the taxpayer's income under a method which does clearly reflect income. 26 U.S.C. § 446(b); *Caulfield,* 33 F.3d at 992. In a case such as this, where the taxpayer files income tax returns which substantially understate income, an assessment of deficiency is "necessarily an estimate." *Dodge,* 981 F.2d at 353. As long as the reconstruction method is "reasonable and logical," Page may not complain of its inevitable inaccuracies. *Id.* The bank-deposits-plus-cash-expenditures method is a rational way to reconstruct income, where, as

---

5. All citations to the Internal Revenue Code refer to the Code in effect for the years in question, unless otherwise noted.

here, the Commissioner properly segregates taxable and nontaxable income and expenditures. *See Caulfield,* 33 F.3d at 993. Faced with Page's role as trustee and minister for the church; his professed desire to eliminate the trustees' private bank accounts to evade taxes; nearly $100,000 deposited in the church's account over the two-year period; Page's primary use of cash transactions; unidentified checks, wire transfers, and money orders; the church's payment of his living expenses; Page's report of only minimal income; and his failure to produce books or records accounting for the source of the deposits, the Commissioner reasonably used the bank-deposits-plus-cash-expenditures method of reconstruction. *See Dodge,* 981 F.2d at 353. Such a showing also meets the threshold requirement of "linking the taxpayer to the income generating activity," *Day,* 975 F.2d at 537, and entitles the Commissioner's assessment to the usual presumption of correctness. *See id.*

■ Once the Commissioner showed the deposits to be in the nature of income and to exceed what Page reported as income, Page bore the burden of persuading the factfinder whether and to what extent the deposits were nontaxable to him. *Dodge,* 981 F.2d at 354. On appeal, Page specifically argues against the inclusion of the following items in his gross income: (1) monies disbursed from the church's account to Grossinger and to another trustee; (2) child support payments; (3) the entire proceeds of the airplane Page allegedly sold; and (4) cash "donations" from church members. These arguments warrant little discussion. First, the tax court found that monies were disbursed from the church's account to other church trustees, not that those amounts were *earned* by the other trustees. Second, the tax court did not clearly err in finding that, contrary to Page's

contention, Page did not pay child support out of his reported stipend, but rather made payments by traveler's checks, money orders, and checks from Grossinger's bank account, which Page reimbursed. Third, as discussed earlier, the tax court disbelieved Page's testimony that the deposit of $12,200 represented the sales proceeds of his airplane because, among other things, the "sale" corresponded neatly with the timing and amount of the Minnesota real estate tax assessment on the Valley View property. The tax court did not give credence to Page's self-serving testimony, nor must it do so.[6] *See Day,* 975 F.2d at 538. In essence, the tax court held that the "sale" was no sale at all. On this record, their holding is not clearly erroneous. Likewise, Page and another trustee testified that some of the cash deposits represented fundraising and contributions to the church, but Page presented no documentation of the amount or source of the alleged funds or contributions. On the record before us and in the absence of contrary evidence, we do not believe that the tax court clearly erred in determining that Page failed to meet his burden of proving that these deposits did not represent income taxable to him.

■ Page also argues that the tax court erred in refusing two adjustments to his income: (1) the charitable contribution of his income to the church; and (2) a parsonage allowance for the Valley View property. Page may make itemized deductions for "charitable contributions" to his church only if he shows that the church is "organized and operated exclusively for religious ... purposes" and that "no part of the net earnings ... inures to the benefit of any private shareholder or individual." 26 U.S.C. § 170(c); *Page I,* 823 F.2d at 1271.[7] As in

---

**6.** We note that:

"Arithmetic precision was originally and exclusively in [Page's] hands, and he had a statutory duty to provide it.... [H]aving defaulted in his duty, he cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination. Nor should he be overly chagrined at the Tax Court's reluctance to credit every word of his negative wails."

*Rowell v. Commissioner,* 884 F.2d 1085, 1088 (8th Cir.1989) (quoting *Bradford v. Commission-*

*er,* 796 F.2d 303, 306 (9th Cir.1986) (internal quotation marks and citation omitted)).

**7.** A church can provide reasonable compensation to a private individual without running afoul of the private inurement prohibition. However, an open-ended arrangement such as this, where "the vast amount of the [church's] expenditures were spent on [Page], his family, and Grossinger" and no record evidence suggests that "any appreciable expenditure, cash or otherwise, was for a charitable purpose," *Page,* T.C.Memo.

*Page I,* Page "retained and exercised control over all money and property involved" and, "[e]ven though the wages and income of [Page] were moved through an account which was denominated in the name of a church, payments from the account or from cash on hand were almost exclusively for personal living expenses," 823 F.2d at 1272 (quoting tax court opinion), food, utilities, airplane maintenance, provision of transportation, and attorney's fees for Page's battles with the I.R.S. As in *Page I,* we hold that the record brims with evidence to support the tax court's findings and conclusion that Page "failed to prove that [he] satisfied the standards of the IRS for a charitable contribution." *Page I,* 823 F.2d at 1272.

■ The tax court did not err in disallowing Page a parsonage allowance under 26 U.S.C. § 107 for the rental value of the Valley View property. Section 107 excludes from gross income the "rental value of a home furnished" to a minister. However, Page did not report the rental value of the property as income, nor did the Commissioner include the rental value in Page's reconstructed income. Because the rental value of the property was not included in Page's gross income, his argument that it should be excluded is inconsequential.

■ Page next argues that the tax court erred in disallowing his election of exemption from the tax on self-employment income earned in his capacity as a minister. *See* 26 U.S.C. § 1402(e). Page contends that he filed the requisite application for exemption in 1978, which the Commissioner wrongfully denied. Page's argument is immaterial because the tax court held that Page had not "specifically shown that the reported stipend was earned solely from performing services as a minister" or that any of the unidentified deposits were earned in his capacity as a minister rather than through self-employment income. *Page,* T.C.Memo. 1993–398 at 24–25. The tax court did not err in so holding. As stated above, Page carried the burden of showing that the Commissioner's determination was in error. Page has presented no evidence linking the funds to his ministerial activities.

■ Page argues that the tax court abused its discretion in imposing a $2,500 sanction against him for filing a groundless or frivolous petition. The tax court may assess such a penalty "[w]henever it appears ... that the taxpayer's position in [a proceeding before it] is frivolous or groundless." 26 U.S.C. § 6673. Although Page attempted to distinguish the facts in this case from those in *Page I,* the tax court found no "meaningful difference." *Page,* T.C.Memo. 1993–398 at 33. Nor do we. In bringing his petition, Page sought to relitigate the issues decided in *Page I* of the charitable contribution deduction and of the income assignment. That Page conceded the issue of income assignment in a pre-trial stipulation does not render the petition non-frivolous when filed. Although the tax court accepted Page's proof of certain expenses and legal fees, the majority of Page's arguments were meritless.

We have considered all other arguments raised by Page and hold them meritless. Accordingly, we affirm the decision of the tax court, as well as its imposition of the $2,500 sanction against Page. Although tempted, we decline to assess further sanctions against Page or his counsel under either 28 U.S.C. § 1912 (1988) or Federal Rule of Appellate Procedure 38.

---

1993–398 at 22–23, does not constitute reasonable compensation.

We do not address, nor did the tax court, *id.* at 23 n. 6, whether the American Fundamentalist Church itself qualifies as an exempt organization under 26 U.S.C. § 501(c)(3). We address only whether 26 U.S.C. § 170 allows Page to deduct the income he earned and allegedly contributed to the church.