ROBERT S. ADCOCK AND JEAN S. ADCOCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Adcock v. Commissioner
Docket No. 14238-91
United States Tax Court
T.C. Memo 1993-488; 1993 Tax Ct. Memo LEXIS 499; 66 T.C.M. (CCH) 1103; 1993 T.C. No. 488; October 21, 1993, Filed *499 Decision will be entered for respondent with respect to issues 1, 2, 3, and 5. Decision will be entered for petitioner Jean S. Adcock with respect to issue 4. For petitioners: Samuel M. McMillan. For respondent: Robert W. West. RUWE
RUWE
MEMORANDUM OPINION RUWE, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Robert S. Adcock Additions to Tax Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1982
$  8,190
$ 4,095
50 percent of
$ 2,048
the interest due
on $ 8,190
1983
10,120
5,060
50 percent of
2,530
the interest due
on $ 10,120
1984
12,130
6,065
50 percent of
3,033
the interest due
on $ 12,130
1985
13,885
6,943
50 percent of
3,471
the interest due
on $ 13,885
Robert S. Adcock and Jean S. Adcock Additions to Tax Year
Deficiency
Sec. 6653(b)(1)(A)
Sec. 6653(b)(1)(2)
1986
$ 3,915
$ 2,936
50 percent of the
interest due on
$ 3,915
The issues for decision are: (1) Whether Robert S. Adcock had unreported income in the amounts determined by respondent; [1] (2) whether Robert S. Adcock is liable for the additions *500 to tax under section 6653(b) [2] for each year in issue; (3) whether Jean S. Adcock qualifies as an innocent spouse pursuant to section 6013(e) for 1986; (4) whether Jean S. Adcock is liable for the addition to tax under section 6653(b) for 1986; and (5) whether Robert S. Adcock is liable for the additions to tax under section 6661(a) for the years 1982 through 1985. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Spanish Fort, Alabama, when they filed their petition in this case. Petitioners filed their joint income tax returns for the taxable years in issue with the Internal Revenue Service Center, Atlanta, Georgia. *501 References to petitioner in the singular will refer only to Robert S. Adcock. Petitioner began working for Mobile Paint Manufacturing Co. (Mobile Paint) in approximately 1964. During 1982 through April 1986, petitioner was the director of advertising and supervisor of Mobile Paint's print shop. Petitioner was responsible for Mobile Paint's advertising budget, some of which was paid to Twentieth Century Printing Services (Twentieth Century). Petitioner also ordered paint can labels and other printing supplies from various sources, including Twentieth Century. During the years in issue, Henry L. Dumas was the controlling shareholder and president of Twentieth Century. Mr. Dumas purchased the controlling stock of Twentieth Century in 1976 from Katherine Ivey. During the following year, Twentieth Century's business with Mobile Paint decreased. After being informed that Ms. Ivey was paying petitioner a kickback for Mobile Paint's business, Mr. Dumas approached petitioner and offered to pay him a 10-percent kickback on purchases that Mobile Paint made from Twentieth Century. Thereafter, Mr. Dumas made kickback payments of 10 percent to petitioner during each year from 1977 until *502 April 1986. These payments were made in cash. In 1977, Mobile Paint was making purchases of approximately $ 50,000 to $ 60,000 per year. The amount of purchases that Mobile Paint made from Twentieth Century increased substantially during the years subsequent to 1977. By 1985, Mobile Paint's purchases from Twentieth Century were over $ 340,000 per year. In 1986, the grand jury for the United States District Court for the Southern District of Alabama charged petitioner with using his position at Mobile Paint to extort $ 34,200 from Mr. Dumas during 1985 in violation of 18 U.S.C. sec. 1951(b)(3) (1988). In January 1987, petitioner pled guilty to this charge. Respondent determined that petitioner had unreported income from kickbacks in an amount equal to 10 percent of the payments, which Mobile Paint made to Twentieth Century during each year in issue. These amounts were computed in the notices of deficiency as follows: Checks to Twentieth
Extortion
Additional
Century Printing Rate Income
1982
$ 188,634   10%
$ 18,863
1983
248,371   10%
24,837
1984
297,530   10%
29,753
1985
341,764   10%
34,176
1986
102,477.62
10%
[1] 10,043
*503 Petitioner does not dispute respondent's deficiency determination for 1985. All other adjustments in the notices of deficiency, including the additions to tax for 1985, are still in issue. Issue 1. Unreported Income
The first issue for decision is whether petitioners [3] failed to report kickback payments as gross income for each of the years at issue other than 1985. Section 61 provides that gross income means all income from whatever source derived. Gross income includes the receipt of kickbacks and bribes. Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993), affg. T.C. Memo. 1991-636; United States v. Wyss, 239 F.2d 658 (7th Cir. 1957). Generally, respondent is entitled to use any reasonable means of reconstructing income and is given greater latitude in determining which method of reconstruction to apply where the case involves an illegal enterprise *504 in which the taxpayer has kept no records. Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989). When the taxpayer has kept inaccurate or incomplete records, the Commissioner may look to other information when reconstructing taxable income. Day v. Commissioner, 975 F.2d 534, 537-538 (8th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-140; Merritt v. Commissioner, 301 F.2d 484, 486 (5th Cir. 1962), affg. T.C. Memo. 1959-172. Furthermore, mathematical precision is not required of respondent, for if it were, it "would be tantamount to holding that skilful concealment is an invincible barrier to proof." United States v. Johnson, 319 U.S. 503, 518 (1943). Respondent's determinations are presumed correct, and petitioner has the burden to establish that they are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Courts have recognized a limited exception to this general rule where respondent alleges that the taxpayer has unreported illegal income. Petzoldt v. Commissioner, supra at 688. *505 In such cases, the deficiency determination must be supported by "some evidentiary foundation linking the taxpayer to the alleged income-producing activity". Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979), revg. 67 T.C. 672 (1977); Blohm v. Commissioner, 994 F.2d at 1549. Once this minimal evidentiary showing has been made, the deficiency determination is presumed correct, and it becomes the taxpayer's burden to prove it arbitrary or erroneous. Blohm v. Commissioner, supra.
No income from kickbacks was reported on any of petitioners' returns for the years in issue. Respondent has met the burden of introducing evidence linking petitioner to the illegal activity from which the deficiencies were determined. Petitioners, therefore, have the burden of proving that respondent's determination is arbitrary or erroneous. Rule 142(a); Blohm v. Commissioner, supra.
Petitioners have not met their burden of proving respondent's determination arbitrary or erroneous. We note that petitioner Robert Adcock, who was *506 present at trial, did not testify. "The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioners' pretrial memorandum indicated that Robert Adcock might not testify, because he may wish to assert his Fifth Amendment privilege. Mr. Adcock, however, never invoked the privilege at trial; and, even if he had, we believe that the rule announced in Wichita Terminal would apply. In a civil trial where a party invokes the Fifth Amendment privilege against self-incrimination as a reason for not testifying, a negative inference may be drawn provided there is independent evidence, in addition to the mere invocation of the privilege, upon which to base the negative inference. Baxter v. Palmigiano, 425 U.S. 308, 318-319 (1976); Petzoldt v. Commissioner, supra at 685. As we have already *507 indicated, there was strong independent evidence that petitioner engaged in a kickback scheme during the years in issue. Based on the record, we find respondent's determination reasonable; therefore, we hold for respondent on this issue. Issue 2. Fraud -- Robert S. Adcock
The second issue for decision is whether petitioner Robert Adcock is liable for the additions to tax under section 6653(b). For the years 1982 through 1985, section 6653(b)(1) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. Section 6653(b)(2) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment that is attributable to fraud. As to 1986, section 6653(b)(1)(A) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to the sum of 75 percent on the portion of the underpayment attributable to fraud. Section 6653(b)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable on *508 the portion of the underpayment that is attributable to fraud. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Petzoldt v. Commissioner, 92 T.C. at 698. Respondent has the burden of proving by clear and convincing evidence that an underpayment exists for the years in issue and that some portion of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). Fraud is not to be presumed. Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25. To meet this burden, respondent must show that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. King's Court Mobile Home Park v. Commissioner, 98 T.C. 511, 516 (1992); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. King's Court Mobile Home Park v. Commissioner, supra; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), *509 affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Since direct proof of the taxpayer's intent is rarely available, fraud may be proved by circumstantial evidence and reasonable inferences drawn from the facts. Spies v. United States, 317 U.S. 492 (1943); King's Court Mobile Home Park v. Commissioner, supra; Rowlee v. Commissioner, supra.
Courts have relied on a number of indicia of fraud, and the existence of several factors is persuasive circumstantial evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. T.C. Memo. 1982-603. The factors relevant here are: (1) Engaging in illegal activities, (2) dealing in cash, (3) maintenance of inadequate records, and (4) failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. Another relevant factor is whether a taxpayer has consistently underreported income over an extended period *510 of time. Solomon v. Commissioner, supra.
Respondent has established that petitioner received kickback income from Mr. Dumas during each of the years in issue. From 1977 through April 1986, Mr. Dumas paid petitioner 10 percent of the purchases that Mobile Paint made from Twentieth Century. These payments were made in cash, in private, and were sometimes made once or twice a week. Mr. Dumas testified that on one occasion he and petitioner disagreed as to the kickback amount owed petitioner. Thereafter, Mr. Dumas began giving petitioner a voucher along with the cash payments. The vouchers included the number of invoices and the amount Mobile Paint had paid Twentieth Century. Mr. Dumas identified copies of some of the vouchers and checks that he had written to himself from Twentieth Century's account in order to obtain cash to pay petitioner. [4]
Petitioner *511 argues that respondent has not proven that petitioner received the specific amount of kickback income that respondent determined in the notices of deficiency. In order to establish the existence of fraud, it is not necessary to prove the exact amount of omitted income and resulting tax that was due to fraud. Petzoldt v. Commissioner, supra at 699. Here, it has been clearly established that a substantial amount of sales were made by Twentieth Century to Mobile Paint during each year and that Mr. Dumas paid petitioner 10 percent of the amount of those sales as kickbacks. As to the amount of kickback income, petitioner admitted in his reply to respondent's answer that "substantial purchases" were made by Mobile Paint from Twentieth Century during the years in issue but did not admit the specific amounts alleged (the same amounts used in the notices of deficiency) because "petitioners do not have records available to determine exact amounts." Even without records, if petitioner had a legitimate dispute about the exact amount of Twentieth Century's sales to Mobile Paint or the amount of kickbacks that he received, petitioner could have testified at *512 trial. As previously indicated, petitioner's failure to testify raises an inference that his testimony on this point would have produced unfavorable results, see Baxter v. Palmigiano, 425 U.S. at 318-319; Petzoldt v. Commissioner, 92 T.C. at 685, and his failure to maintain records of his income is consistent with fraud. Finally, we note that petitioner has made restitution to Mobile Paint for the entire $ 34,200, which respondent determined was kickback income in 1985, and Mobile Paint's bonding company has paid an additional $ 119,000 to Mobile Paint as a result of petitioner's kickback scheme. These combined amounts exceed the kickback income attributed to petitioner. Petitioner failed to reveal his kickback income to his return preparer and failed to report kickback income for all the years at issue. Petitioner also attempted to conceal his actions from his employer, the Federal Bureau of Investigation (FBI), and the Internal Revenue Service. In conjunction with an investigation by the FBI, Mr. Dumas agreed to wear a recorder so that his conversations with petitioner could be taped. While being taped, petitioner *513 advised Mr. Dumas to lie to the FBI when questioned about the use of the cash withdrawn from Twentieth Century. When special agent, Gerald Shockley of the FBI, informed petitioner of the recordings, petitioner stated "you have done a great job" and inquired as to what could happen to him if he should be prosecuted. When the revenue agent, Diane Green, first asked petitioner if he had received any kickback income, he denied receiving kickbacks. Only after she asked him about his criminal conviction did he admit to pleading guilty to receiving kickbacks. Petitioner failed to keep any records of the kickbacks received and failed to cooperate with respondent. Based on the record in this case, we conclude that respondent has proven that petitioner intended to conceal, mislead, or otherwise prevent the collection of taxes. Since the unreported income is the sole source of the deficiencies, we find petitioner liable for the additions to tax under section 6653(b)(1) and (2) for the years 1982 through 1985 and section 6653(b)(1)(A) and (B) for 1986, and sustain respondent's determinations as contained in the notices of deficiency. Issue 3. Innocent Spouse
The third issue for decision *514 is whether petitioner Jean S. Adcock qualifies as an innocent spouse pursuant to section 6013(e) with respect to the deficiency for 1986. Generally, a husband and wife are jointly and severally liable for the total tax due on their joint Federal income tax return. Sec. 6013(d). In some situations, a spouse may qualify as an "innocent spouse" and be relieved of joint and several liability. Sec. 6013(e). The spouse seeking relief under section 6013(e) has the burden of proof. Rule 142(a); Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). For Mrs. Adcock to prevail under section 6013(e) she must prove that: (1) She and Robert Adcock filed a joint return; (2) on that joint return, there was a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the joint return, she did not know, and had no reason to know, of the substantial understatement; and (4) taking into account all the facts and circumstances, it is inequitable to hold her liable for the deficiency attributable to the substantial understatement. Sec. 6013(e)(1)(A)-(D); Bokum v. Commissioner, 94 T.C. at 138 *515 (failure to prove any one of the requirements prevents the taxpayer from qualifying as an innocent spouse). Respondent agrees that Mrs. Adcock qualifies under the first two statutory requirements. Accordingly, the Court will address the third and fourth requirements. To be relieved from liability for omissions of income, Mrs. Adcock must show that she was unaware of the circumstances which gave rise to that omission and not merely unaware of the tax consequences. Purcell v. Commissioner, 86 T.C. 228, 238 (1986), affd. 826 F.2d 470 (6th Cir. 1987). She must also show that she had no reason to know of the understatement. As to having reason to know, the standard is whether "a reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted." Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989) (fn. ref. omitted.), affg. T.C. Memo. 1988-63. Thus, the spouse has a duty of inquiry. Stevens v. Commissioner, supra. *516 Mrs. Adcock contends that she had no knowledge, or reason to know, of the understatement for 1986. In our view, Mrs. Adcock knew, and had reason to know, of the transactions leading to the understatement. Mrs. Adcock has been the vice president of a real estate title company for 10 years; therefore, she is familiar with financial matters. She was aware that petitioner had been charged with, and pled guilty to, extorting $ 34,200 in 1985. She knew that petitioner was obligated to pay $ 34,200 in restitution to Mobile Paint. She was aware that a bonding company was seeking approximately $ 119,000 from petitioner, an amount significantly greater than what was involved in petitioner's 1985 charge. Mrs. Adcock attended petitioner's plea hearing in January 1987, approximately 3 months before signing the 1986 return. At the hearing, the Assistant United States Attorney stated that petitioner had received kickback income from Mr. Dumas from 1977 until April 1986. While Mrs. Adcock contends that she was unable to hear the proceedings, she admitted that she and petitioner later talked about the hearing. Mrs. Adcock also argues that she received no benefits from the kickbacks. Whether *517 a spouse significantly benefited, either directly or indirectly, from the unreported income is an important factor in determining whether it is inequitable to hold a spouse liable. Belk v. Commissioner, 93 T.C. 434, 440 (1989); Purcell v. Commissioner, 86 T.C. at 242. Normal support is not considered a significant benefit. Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979). Mrs. Adcock bears the burden of proving that she received no significant benefit from the unreported income other than normal support, and this burden must be supported with specific evidence of lifestyle expenditures and asset acquisitions. Estate of Krock v. Commissioner, 93 T.C. 672, 681 (1989); Bokum v. Commissioner, 94 T.C. at 157. Mrs. Adcock failed to provide specific evidence of lifestyle expenditures and asset acquisitions. Thus, we are unable to determine whether Mrs. Adcock significantly benefited from the understatements in a manner that was above her "normal" support. See Bokum v. Commissioner, supra at 157. *518 Mrs. Adcock has failed to demonstrate that she neither knew, nor had reason to know, about the substantial understatement at the time petitioners' return was signed. Furthermore, after taking into account all the facts and circumstances, it is not inequitable to hold Mrs. Adcock liable for the deficiency. Therefore, we sustain respondent's determination. Issue 4. Fraud -- Jean S. Adcock
Respondent determined that the 1986 deficiency was also due to the fraud of Mrs. Adcock. Generally, a husband and wife are jointly and severally liable for the total tax due on their joint Federal income tax return. Sec. 6013(d). Fraud, however, is not imputed from one spouse to the other. Sec. 6653(b)(3). Thus, while Mrs. Adcock has failed to demonstrate that she was an innocent spouse, respondent has the burden of proving by clear and convincing evidence that she intended to evade taxes which she knew or believed to be owed by concealing, misleading, or otherwise preventing the collection of taxes. Sec. 7454(a); Rule 142(b). Respondent has not met this burden. Although Mrs. Adcock signed the 1986 joint return containing the understatement of tax, the fraudulent activities were those *519 of Mr. Adcock, not Mrs. Adcock. While Mrs. Adcock may have known, and had reason to know, on January 7, 1987, that Robert Adcock had received kickback income for several years, there is no clear and convincing evidence that Mrs. Adcock had the requisite fraudulent intent to evade tax. Accordingly, we conclude that respondent has not shown by clear and convincing evidence that Mrs. Adcock intended to evade tax she believed was owing. Issue 5. Section 6661 Addition to Tax
The final issue for decision is whether petitioner is liable for the addition to tax under section 6661 for the years 1982 through 1985. Section 6661(a) provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of tax. Pallottini v. Commissioner, 90 T.C. 498, 501 (1988). An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the return. Sec. 6661(b)(1)(A). The amount of the understatement may be reduced under section 6661(b)(2)(B) for amounts adequately disclosed or supported by substantial authority. Respondent's determination of the *520 addition to tax is presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioner's understatement was substantial within the meaning of section 6661(b)(1)(A). Petitioner did not adequately disclose the kickback payments, and there is no substantial authority supporting petitioner's failure to report this income. We find that petitioner's underpayment is due to a substantial understatement for each of the years in question; therefore, we hold for respondent on this issue. Decision will be entered for respondent with respect to issues 1, 2, 3, and 5. Decision will be entered for petitioner Jean S. Adcock with respect to issue 4. Footnotes
1. Petitioner Robert S. Adcock does not dispute the 1985 deficiency.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. There is no explanation of why the additional income determined by respondent is slightly less than 10 percent of the amount in the checks column.↩
3. Mrs. Adcock is a petitioner only with respect to 1986.↩
4. Mr. Dumas identified checks totaling $ 12,953.32 for 1983, $ 14,401.31 for 1984, $ 28,240.94 for 1985, and $ 9,131.75 for 1986.↩