Stephen S. DAY; Jeanette
L. Day, Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE SERVICE,
Appellee.

Richard D. WISE, Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE SERVICE,
Appellee.

No. 91–2991.

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1992.

Decided Sept. 17, 1992.

extent of Ace Hardware's participation in the lawsuit.

Daniel W. Schermer, Minneapolis, Minn., argued, for appellants.

Regina S. Moriarty, Washington, D.C., argued (Gary R. Allen, Ann B. Durney and Regina S. Moriarty, on the brief), for appellee.

Before BOWMAN and BEAM, Circuit Judges, and LARSON,* District Judge.

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

BEAM, Circuit Judge.

This appeal arises from a final judgment entered in the United States Tax Court finding that Stephen and Jeanette Day and Richard Wise, under-reported income for the tax years 1982 and 1983, in violation of the Internal Revenue Code. They appeal this deficiency judgment, as well as the Tax Court's assessment of penalties for fraud under Internal Revenue Code section 6653(b) and for substantial understatement under Code section 6661. Jeanette Day also appeals the Tax Court's determination that she is not entitled to relief from joint liability for federal income taxes as an "innocent spouse" under Code section 6013(e). For the reasons stated below, we affirm the judgment of the Tax Court with regard to Stephen Day and Richard Wise, we reverse the Tax Court's determination that Jeanette Day is not entitled to protection as an innocent spouse, and we remand that issue for further proceedings.

## I.  BACKGROUND

Stephen S. Day, ("Stephen"), and Richard D. Wise, ("Richard"), were equal partners in "The Club," which was in the business of owning and operating massage parlors. The Club owned and operated three massage parlors in tax year 1982, and five massage parlors in tax year 1983. All of the massage parlors were located in Minneapolis, Minnesota. The Club reported gross incomes of $274,023.00 in 1982, and $655,224.00 in 1983 on its federal income tax returns. Stephen and Jeanette Day, ("Jeanette"), reported joint gross incomes of $116,243.00 and $204,286.00 from The Club on their Federal income tax returns for the tax years of 1982, and 1983 respectively. Wise reported gross incomes of $95,827.00 and $199,988.00 from The Club for the two years at issue.

On September 15, 1982, the Fridley, Minnesota, police department executed a search warrant at one of The Club's massage parlors. It seized business records including: leases, sales slips, invoices, membership cards, ledger books, bank statements, and monthly income reports. This information was eventually turned over to the Commissioner of the Internal Revenue Service, ("Commissioner").

The Club had two streams of income: the "door money" and the "back room" money. The "door money" consisted of an average $25.00 fee that each customer paid to enter the massage parlor. This money was recorded on the sales slips. The "back room" money was the fee paid by the masseuses for the use of the back rooms. The masseuses were not employees of The Club, but rather were lessees who were entitled, under their lease agreement, to use the back rooms upon the payment of the "back room" fee. The Club provided two methods of payment for this "back room" money. A masseuse could elect to pay The Club forty percent of the total fee she received for services to a customer, or to pay a flat fee each time she used a back room. The flat fee was by far the more popular payment method, and the average fee was $10.00. This "back room" money was not noted on the sales slips.

The Commissioner examined copies of all sales slips that were seized in the September 1982 raid, as well as the seized ledgers and all of The Club's bank statements for 1982. After reconciling the moneys recorded in the ledgers to the sales receipts and bank deposits, as well as to The Club's 1982 Federal income tax return, the Commissioner concluded that the "back room" money was not reflected on the 1982 and 1983 sales slips and had not been reported as taxable income.

During the years in question, Stephen and Jeanette lived in Grand Rapids, Minnesota, approximately two hundred miles from Minneapolis. Jeanette visited Minneapolis only twice a year, and never visited any of the massage parlors. She had no knowledge of how the massage parlors operated, and had no contact with the masseuses or the business records of the parlors.

The Commissioner determined that Stephen and Jeanette failed to report partnership income of $55,070.00 and $196,568.00 for 1982 and 1983 respectively, and rejected Jeanette's claim for innocent spouse status. The Commissioner also determined that

Richard failed to report that same amount of partnership income for the years in question. The Tax Court affirmed these determinations by the Commissioner, and this appeal ensued.

## II. DISCUSSION

Appellants raise four issues on appeal: (1) whether the findings of the Commissioner are entitled to a presumption of correctness; (2) whether the accounting method employed by the Commissioner is improper; (3) whether the fraud penalty is appropriate; and (4) whether Jeanette is entitled to innocent spouse protection.

### 1. Presumption of Correctness

■ The Commissioner's determination of a tax deficiency is presumptively correct, and the taxpayer bears the burden of proving that the determination is arbitrary or erroneous. *United States v. Janis*, 428 U.S. 433, 440–41, 96 S.Ct. 3021, 3025–25, 49 L.Ed.2d 1046 (1976); *Mattingly v. United States*, 924 F.2d 785 (8th Cir.1991). Courts have occasionally declined to accord a presumption of correctness to a deficiency notice when the Commissioner fails to introduce any substantive evidence linking the taxpayer to the income generating activity in question. *Zuhone v. Commissioner*, 883 F.2d 1317, 1325 (7th Cir.1989). Such a deficiency notice has been characterized as a naked assessment. *Janis*, 428 U.S. at 442, 96 S.Ct. at 3026.

■ The issue of a naked assessment arises primarily when unreported income from an illegal tax-generating activity is alleged. *Id.; Gerardo v. Commissioner*, 552 F.2d 549, 554 (3d Cir.1977); *Weimerskirch v. Commissioner*, 596 F.2d 358 (9th Cir.1979). However, it is generally accepted that the Commissioner also must provide evidence linking a taxpayer to a legal tax-generating activity before being entitled to the presumption of correctness. *Anastasato v. Commissioner*, 794 F.2d 884, 887 (3d Cir.1986) *accord Portillo v. Commissioner*, 932 F.2d 1128 (5th Cir. 1991).

■ Appellants assert that the Commissioner made a naked assessment of their 1983 tax liability, and that the determination is not entitled to the presumption of correctness. Appellants base this assertion on the premise that because the 1983 deficiency judgment was not based on individual 1983 records, it must be a naked assessment. We disagree. Appellants do not contend that they are unconnected to the tax-generating income. It is undisputed that appellants managed the massage parlors for the years in question. Accordingly, the Commissioner has demonstrated a link between the taxpayers and the tax-producing income. Such a showing satisfies the threshold level of proof and entitles the findings of the Commissioner to the usual presumption of correctness. *Zuhone*, 883 F.2d at 1326; *Gerardo*, 552 F.2d at 554; *Pizzarello v. United States*, 408 F.2d 579 (2d Cir.), *cert. denied*, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969).

### 2. Improper Methodology

■ We find appellants' assertion that the accounting method employed by the Commissioner was improper to be without merit. We review the Tax Court's determination that the Commissioner's income reconstruction was reasonable under a clearly erroneous standard. *Weimerskirch*, 596 F.2d at 359. Appellants allege that the Commissioner employed an improper method to estimate their income. Characterizing the method as "the more you show, the more you owe", appellants argue strenuously that the method employed by the Commissioner does not reflect the taxpayers' income. Such a characterization of the method employed by the Commissioner is misleading.

■ We are faced with a situation where taxpayers have failed to declare one of two streams of income generated from the same transactions. Since the records kept by appellants do not include this second income stream, it was necessary for the Commissioner to create a substitute method for reconstructing income. *Adamson v. Commissioner*, 745 F.2d 541, 548 (9th Cir.1984). When the records kept by the taxpayer are inaccurate or incomplete,

the Commissioner may look to other information when determining taxable income, *Merritt v. Commissioner*, 301 F.2d 484, 486 (5th Cir.1962), and may estimate assessments by "any reasonable method." *Coleman v. United States*, 704 F.2d 326, 329 (6th Cir.1983). While the absence of adequate tax records "does not give the Commissioner carte blanche for imposing Draconian absolutes," a taxpayer who has defaulted on the task of supplying adequate records of income is in no position to be overly critical of the Commissioner's labor. *Webb v. Commissioner*, 394 F.2d 366, 372–73 (5th Cir.1968).

Based on all of the circumstances of this case, we cannot find that the Tax Court was erroneous in approving the methodology employed by the Commissioner. It is undisputed that taxpayers were in the business of running massage parlors during 1982 and 1983. The taxpayers failed to keep any records of the "back room" money during that time period, and failed to present any accounting of such money at trial. In its May 1, 1991, Order denying reconsideration of the deficiency judgment, the Tax Court noted that "if petitioners had offered any evidence whatsoever" of the inaccuracy of the deficiency judgment, the court would have reduced the deficiency by the proper amount. The Tax Court found that:

> Petitioners offered no competent evidence whatsoever showing that respondent's accounting of the back room money is inaccurate. No business records or analysis establishing petitioners' business practices were introduced. Instead, petitioners relied on their vague, speculative, and conclusory testimony that respondent had overstated the amount of back room money earned by the business.

*Day v. Commissioner*, Tax Court Memorandum Opinion, 1991–140 at 9 (April 1, 1991).

█ The taxpayers have the burden of proving that the determination of the Commissioner was erroneous, and the Tax Court held that appellants failed to meet that burden. Appellants did not produce any business records to contradict the assessment of the Commissioner. The only evidence offered by appellants was their own testimony which, as indicated, the Tax Court found to be "vague, speculative and conclusory." *Id.* The Tax Court is not required to give credence to the self-serving testimony of interested parties. *See, Spatafore v. United States*, 752 F.2d 415, 419 (9th Cir.1985); *Gerardo*, 552 F.2d at 553; *Geiger v. Commissioner*, 440 F.2d 688 (9th Cir.1971); *Cullers v. Commissioner*, 237 F.2d 611, 615 (8th Cir.1956). The Commissioner extrapolated information from 1982 to determine the extent of unreported income for 1983. This approach is not unreasonable, *see Bradford v. Commissioner*, 796 F.2d 303, 306–07 (9th Cir. 1986) (extrapolation of a two-year tax assessment for a three-month record of sales upheld); *DeLorenzo v. United States*, 555 F.2d 27, 29 (2d Cir.1977) (extrapolation provides reasonable estimate unless taxpayer produces contrary evidence). In the absence of any contrary evidence, we find that the decision of the Tax Court is not clearly erroneous.

### 3. Fraud and Substantial Underpayment Penalties

█ The Tax Court's findings of fraud and substantial underpayment are factual in nature, and may be reversed only if this panel finds that there is no clear and convincing evidence of fraud. *Bradford*, 796 F.2d at 307; *Estate of Gryder v. Commissioner*, 705 F.2d 336, 338 (8th Cir.), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 525, 78 L.Ed.2d 709 (1983). Code sections 6653(b)(1) and 6661(a) provide for an additional fifty percent assessment for fraud, and an additional twenty-five percent assessment for substantial understatement. 26 U.S.C. §§ 6661(a), 6653(b)(1) (1983).

█ Fraud has been defined as intentional wrongdoing on the part of the taxpayer, motivated by a specific purpose to evade taxes the taxpayer knows or believes to be owing. *Stoltzfus v. United States*, 398 F.2d 1002, 1004 (3d Cir.1968). Understatement of income, standing alone, will not support a finding of fraud. *Mer-*

*ritt*, 301 F.2d at 487. However, the failure to report one of two sources of profit from the massage parlors resulted in the consistent and substantial understatements at issue in this case. Coupled with the showings that the records were both inaccurate and misleading, and that the appellants attempted to conceal the understated income, this failure to report income is sufficient to uphold the finding of fraud. *Id.; see also Bradford*, 796 F.2d at 307. We find that the fraud and substantial understatement determinations of the Tax Court are supported by the record, and we therefore affirm the fifty percent and twenty-five percent penalties added to the deficiency judgment.

### 4. Innocent Spouse

 Under Code section 6013(e)(1), a spouse may be relieved of joint tax liability for an understatement if: (a) a joint return was filed; (b) on the return there is a substantial understatement of tax which is attributable to the grossly erroneous items of one spouse; (c) the other spouse established that in signing the return he or she did not know and had no reason to know that there was a substantial understatement; and (d) taking into account all the facts and circumstances, it is inequitable to hold the spouse liable for the deficiency in tax attributable to such substantial understatements. 26 U.S.C. § 6013(e)(1) (1980). The Commissioner concedes that the first two factors were met in this case.

The Tax Court found that Jeanette failed to introduce evidence to prove that she did not benefit from the understatement, and therefore was not entitled to innocent spouse status. However, the tax court required the impossible; that Jeanette explain the distribution of the money of whose existence she claims to be unaware. In doing so, the court incorporated Stephen into his wife's defense, and placed an undue burden on Jeanette.

> Jeanette and [Stephen] Day testified, in extremely general terms, that they did not live an extravagant life. However, they did not enter into evidence a list of their assets, and did not explain the ulti-

mate disposition of the undeclared income....

*Day v. Commissioner*, Tax Court Memorandum Opinion, at 15–16. This incorporation of Stephen into Jeanette's innocent spouse defense is incorrect as a matter of law. We therefore remand the issue of the innocent spouse defense to the Tax Court. On remand, the Tax Court should determine whether Jeanette substantially benefitted from the understatements, and whether a reasonable taxpayer in Jeanette's position would have known, or had reason to know, of the understatements. *Erdahl v. Commissioner*, 930 F.2d 585, 589 (8th Cir.1991).

### III. CONCLUSION

In light of the aforementioned reasoning, we affirm in part, reverse in part, and remand to the Tax Court for further proceedings consistent with this opinion.