T.C. Memo. 1997-563

UNITED STATES TAX COURT

MICHAEL G. KROPOSKI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8056-96.                    Filed December 23, 1997.

    <u>Held</u>:  P failed to prove that any portion of a
payment he received from his former employer after
being laid off constitutes damages excludable under
sec. 104(a)(2), I.R.C.

Michael G. Kroposki, pro se.

<u>Michael P. Breton</u>, for respondent.

MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  Respondent determined a deficiency of $30,993 in petitioner's 1993 Federal income tax.  The only issue to be decided is whether petitioner may exclude from gross income any portion of a payment received pursuant to a settlement agreement in 1993.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for 1993, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Some facts have been stipulated and are so found.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.  We need find few facts in addition to those stipulated and, accordingly, will not separately set forth those findings.  We will include additional findings of fact in the discussion that follows.  Petitioner bears the burden of proof on all questions of facts.  Rule 142(a).

## Background

At the time the petition was filed, petitioner resided in Monroe, New York.

Petitioner was born in 1946 and reached the age of 47 in 1993.

Petitioner was employed as an attorney with Boehringer Ingelheim Pharmaceutical, Inc. (Boehringer), from October 1, 1979, through May 11, 1992.

By letter dated March 9, 1992, from Boehringer (the March 9 letter), petitioner was notified that, effective May 4, 1992, he would be permanently laid off as part of a restructuring within the company (the restructuring). Petitioner was one of a number of Boehringer employees laid off on account of the restructuring (the laid off employees). The laid off employees were offered a package of benefits. Among those benefits was a payment entitled "special severance payment". The amount of the special severance payment offered to a particular laid off employee was determined pursuant to a generally applicable schedule that took into account years of service and base salary. The amount of the special severance payment offered to petitioner was $112,542.21. Petitioner was given until April 30, 1992, to accept that special severance payment by signing an agreement entitled "separation agreement" (the separation agreement). Petitioner did not sign the separation agreement and, as a result, did not receive the special severance payment offered to him. Petitioner retained a lawyer who wrote to Boehringer on April 23, 1992 (the April 23 letter), stating that Boehringer's termination of petitioner's employment violated the "Age Discrimination in Employment Act ('ADEA'), 29 U.S.C. § 621 et seq." (ADEA). The April 23 letter invites settlement but threatens litigation "under the ADEA and any other theories that are meritorious." By counsel, Boehringer responded to the April 23 letter with a letter of its own, dated

May 1, 1992, denying any grounds for an ADEA claim but allowing for further discussion. Following one or more telephone conversations between counsel for Boehringer and counsel for petitioner, Boehringer's counsel again wrote to petitioner's counsel on June 12, 1992 (the June 12 letter). The June 12 letter recites various separation benefits that petitioner already had received, offers "to increase the original severance offer to * * * [petitioner] by $2,500", offers to make the total payment in January 1993 as requested by petitioner, and notes that the following documents accompany the letter: (1) a draft letter of recommendation that would be signed by the appropriate Boehringer official and (2) a "revised Release and Settlement Agreement".

Subsequent to the June 12 letter, petitioner and Boehringer entered into an agreement entitled "Settlement and General Release Agreement" (the final agreement). The final agreement contains numerous recitals, including the following: (1) that petitioner's employment relationship with Boehringer had been terminated, (2) that petitioner "has made certain claims for damages against * * * [Boehringer], including those set forth in * * * [the April 23 letter]", (3) that petitioner alleges "that the termination of the employment relationship was unjust and discriminatory", and (4) that Boehringer denies those allegations and asserts that it was legally entitled to terminate its

employment relationship with petitioner.  In consideration of the

terms, covenants, and conditions of the final agreement,

petitioner and Boehringer agree as follows, among other things:

     1.  In full settlement of all of Releasor's [petitioner's] claims related to the employment relationship and the termination of the employment relationship, Company [Boehringer] shall pay to Releasor no earlier than January 15, 1993 and no later than January 30, 1993, the sum of * * * [$115,500.00]. Company may withhold from said payment Federal Insurance Contributions Act tax, federal and state taxes.

          *     *     *     *     *     *     *

     2.  * * * Releasor has not filed any complaints, claims, or actions against Company * * * with any state, federal, or local agency or court and * * * will not do so * * *

          *     *     *     *     *     *     *

     6.  * * * Releasor hereby fully RELEASES, DISCHARGES and WAIVES any and all claims, counts, causes of action and demands of every kind and nature, whether or not now known to Releasor, arising out of Releasor and Company's employment relationship or the termination of the employment relationship, which Releasor has, or under any circumstances could or might have, against Company, including its parent corporation, subsidiaries * * *

          *     *     *     *     *     *     *

     7.  Releasor understands that this Agreement and the release of claims contained herein covers all claims relating to the employment relationship or the termination of the employment relationship resulting from any act or omission by or on the part of Company committed or omitted prior to the execution of this Agreement, including but not limited to, any and all claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000(e) et seq.; any and all claims under the Civil Rights Act of 1866, 42 U.S.C. Section 1981; any and all claims under the Americans

with Disabilities Act of 1990, 42 U.S.C. Section 12101 et seq.; any and all rights or claims under the Age Discrimination in Employment Act, 29 U.S.C. Section 621, et seq.; any and all claims under the Employee Retirement Income Security Act, 29 U.S.C. Section 1001 et seq.; any and all claims under the Connecticut fair employment practices statutes, CGS §46a-60 et seq.; any and all contract or tort claims; and any and all other claims under any federal, state or local statute or ordinance or under any federal, state or local common law.

8.  It is acknowledged that Releasor may hereafter discover claims or facts in addition to or different from those which Releasor now knows or believes to exist with respect to the subject matter of this Agreement and which, if known or suspected at the time of executing this Agreement, may have materially affected this settlement.  Releasor, nevertheless, hereby waives any right, claim or cause of action that might arise as a result of such different or additional claims or facts.  * * *

9.  * * * The purpose of this Agreement is to provide for an amicable settlement of any and all claims Releasor may have relative to the employment relationship or the termination of the employment relationship.

Numbered paragraphs 6 through 9 of the final agreement are substantially identical to provisions of the separation agreement, which petitioner had refused to sign.

Pursuant to the final agreement, petitioner received $115,500 from Boehringer in January 1993 (the payment). Boehringer withheld taxes (including Federal income tax) from the payment and issued to petitioner a Form W-2, which indicates that information relating to the payment was being furnished to the Internal Revenue Service.

Petitioner did not include the payment as an item of gross income in his 1993 Federal income tax return. Respondent determined a deficiency in tax on the basis that petitioner had omitted the payment as an item of gross income (described as "wages") of $115,500. Petitioner timely petitioned this Court, assigning error to respondent's determination of a deficiency and averring in support of that assignment that the payment had been received in settlement of claims for defamation, fraud, misrepresentation, emotional distress, and age discrimination related to petitioner's wrongful discharge from the employ of Boehringer. In the petition, petitioner concedes that any portion of the payment received in settlement of his claim of age discrimination is an item of gross income and that respondent did not err in adjusting his income accordingly. Petitioner describes the issue for decision as one of "apportionment", apportioning the payment between "personal tortious injury" and the age discrimination claim. Respondent denies both petitioner's assignment of error and the facts averred in support thereof.

## Discussion

Gross income means all income from whatever source derived, unless excluded by law. Sec. 61(a); sec. 1.61-1(a), Income Tax Regs. Generally, compensation for services, including termination or severance pay, is an item of gross income. Sec.

61(a)(1); sec. 1.61-2(a)(1), Income Tax Regs.  With an exception not here relevant, gross income does not include "the amount of any damages received (whether by suit or agreement * * *) on account of personal injuries or sickness".  Sec. 104(a)(2).  "The term 'damages received (whether by suit or agreement)' means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, <u>or through a settlement agreement entered into in lieu of such prosecution</u>."  Sec. 1.104-1(c), Income Tax Regs. (emphasis added).  Only payments received to settle bona fide disputes may be excluded under section 104(a)(2).  See, e.g., <u>Taggi v. United States</u>, 35 F.3d 93, 96 (2d Cir. 1994).

Respondent argues that the payment is an item of taxable compensation for services, viz, severance pay.  Petitioner does not disagree that, if the payment is compensation for services, it is taxable compensation for services.  Rather, petitioner argues that the payment is not compensation for services but is damages received in settlement of various claims.  Petitioner requests that this Court apportion the payment between damages received on account of his claim of age discrimination (which petitioner concedes is an item of gross income; see <u>Commissioner v. Schleier</u>, 515 U.S. 323 (1995) (recovery under the Age Discrimination in Employment Act of 1967 is not excludable under section 104(a)(2)) and damages received on account of his other

claims, which petitioner argues are claims for damages on account of personal injuries within the meaning of section 104(a)(2) (section 104(a)(2) damages). We need not make the apportionment requested by petitioner because petitioner has failed to prove that he received any section 104(a)(2) damages.

When petitioner was laid off by Boehringer, he, like other laid off employees, was offered a package of benefits that included a special severance payment. To obtain a special severance payment, petitioner had to sign the separation agreement, which he did not do. Instead, petitioner entered into negotiations with Boehringer concerning his rights "under the ADEA and any other theories that are meritorious". Apparently, Boehringer did not think much of petitioner's claims, but did offer to increase what it described as "the original severance offer" by $2,500. Petitioner and Boehringer ultimately entered into the final agreement and, pursuant thereto, petitioner received the payment.

Upon consideration of all the facts and circumstances, we believe and so find that Boehringer simply extended the period during which petitioner could accept its original offer of a special severance payment, sweetening it a bit, and, eventually, petitioner accepted the sweetened offer. That finding is supported by the terms of the final agreement, which, in relevant part, is substantially the same as the separation agreement. The

testimony of Cassandra Nikituk, director of human resources for Boehringer and one familiar with personnel matters in connection with the restructuring, also supports that finding.  Ms. Nikituk was the Boehringer official responsible for determining the amount of the special severance payment that would be offered to each laid off employee and for authorizing payment of that amount.  She testified that the payment to petitioner was not the only case in which an offer of a special severance payment to a laid off employee was extended.  Although Ms. Nikituk was not directly involved in the negotiations with petitioner, she testified that, at one point, she was asked by a Boehringer attorney to approve (and she did approve) an additional $2,500 as "a severance amount to settle this case amicably".  Lastly, Ms. Nikituk testified that it "was always * * * [her] understanding" that the payment to petitioner constituted severance pay.

In Webb v. Commissioner, T.C. Memo. 1996-50, where we determined that an amount received by an employee leaving the employ of International Business Machines Corp. (IBM) was severance pay based on tenure and not damages, we accepted the dictionary definition of the term "severance pay" as "an allowance usually based on length of service that is payable to an employee on termination of employment."  (Citing Webster's Ninth Collegiate Dictionary (1985).)  That is an appropriate

definition for this case, and, we believe, it describes a portion, if not all, of <u>both</u> the special severance payment offered to petitioner <u>and</u> the payment. Special severance payments were determined under a schedule generally applicable to laid off employees, based on years of service and base salary. That is enough for us to find that at least a portion of each special severance payment was severance pay. We assume that each special severance payment was also made in consideration of the various releases contained in each of the separation agreements. We need not determine, however, what portion of the consideration in each special severance payment--and, in particular, the special severance payment offered to petitioner--was attributable to such releases because petitioner does not argue (nor would we find based on the evidence in this case) that <u>any</u> of the amount of the special severance payment offered to petitioner constituted section 104(a)(2) damages. Cf., e.g., <u>Webb v. Commissioner</u>, <u>supra</u> (payment made to departing IBM employee who signed a similar release was not sec. 104(a)(2) damages); <u>Taggi v. United States</u>, 35 F.3d 93 (2d Cir. 1994) (similar result with respect to AT&T Communications, Inc., employee signing a "full legal release"). Therefore, since we have found that Boehringer simply extended the period during which petitioner could accept its original offer of a special severance payment, sweetening it a bit, the payment does not constitute section 104(a)(2) damages

at least to the extent of $112,542.21 (the amount of the special severance payment offered to petitioner).

The remaining portion of the payment, $2,957.79 (the additional payment) is not separately dealt with in the final agreement, and, therefore, we must look outside of the final agreement to determine its character.  Cf. Stocks v. Commissioner, 98 T.C. 1, 10 (1992) ("If the settlement agreement lacks express language stating what the settlement amount was paid to settle, then the most important factor in determining any exclusion under section 104(a)(2) is 'the intent of the payor' as to the purpose in making the payment.") (citing Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33;  Metzger v. Commissioner, 88 T.C. 834, 847-848 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988).  Ms. Nikituk was respondent's witness.  Although she did not directly participate in the negotiations with petitioner, she testified that she understood the additional amount to be "a severance amount to settle this case amicably".  Petitioner could have called someone from Boehringer with direct knowledge of those negotiations in an attempt to support petitioner's position that some portion of the additional amount (or, indeed, the payment itself) was section 104(a)(2) damages, but he failed to do so.  We can infer from that failure that such testimony would not have been favorable to petitioner.  Mecom v. Commissioner,

101 T.C. 374, 386 (1993), affd. without published opinion 40 F.3d 385 (5th Cir. 1994); Pollack v. Commissioner, 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We are thus left only with petitioner's testimony that some portion of the additional payment was in settlement of claims for section 104(a)(2) damages. Petitioner's testimony that he made specific claims to Boehringer on grounds other than his ADEA claim and that those claims were settled pursuant to the final agreement was after-the-fact, self-serving, and uncorroborated. We are unwilling to, and need not, accept that testimony at face value. See, e.g., Day v. Commissioner, 975 F.2d 534, 538 (8th Cir. 1992), affg. in part, revg. in part T.C. Memo. 1991-140; Liddy v. Commissioner, 808 F.2d 312, 315 (4th Cir. 1986), affg. T.C. Memo. 1985-107. Petitioner has failed to prove that Boehringer intended any of the additional payment to be section 104(a)(2) damages. More generally, petitioner has failed to prove that any of the additional payment constitutes section 104(a)(2) damages.

In conclusion, petitioner has failed to prove that any of the payment constitutes section 104(a)(2) damages. Respondent's determination of a deficiency in tax is sustained.

Decision will be entered

for respondent.