T.C. Memo. 2000-55


UNITED STATES TAX COURT


ANTHONY TINSMAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8395-98.                    Filed February 22, 2000.


Anthony Tinsman, pro se.

Ann L. Darnold, for respondent.


MEMORANDUM OPINION


DEAN, Special Trial Judge:  Respondent determined deficiencies in petitioner's Federal income taxes of $2,403 for 1994, $1,166 for 1995, and $1,181, for 1996.  Respondent also

determined additions to tax under section 6651(a)[1] for failure by petitioner to file timely his Federal income tax returns in the amounts of $733 for 1994, $292 for 1995, and $295 for 1996.

The issues for decision are: (1) Whether the notice of deficiency is arbitrary and excessive, and therefore is not entitled to the presumption of correctness; (2) whether petitioner received an unreported IRA distribution in 1994; (3) whether petitioner is liable for the additional tax on early distributions from qualified retirement plans; (4) whether petitioner had unreported income for 1995 and 1996; and (5) whether petitioner failed to file timely Federal income tax returns for 1994, 1995, and 1996 without reasonable cause.

The stipulated documents are incorporated herein by reference. Petitioner resided in Midland, Arkansas, at the time he filed his petition in this case.

## Background

During the years at issue and at the time of trial, petitioner was married and had two children.

Petitioner filed a Federal income tax return for 1994 that he signed and dated May 24, 1996. He attached to the tax return a Form W-2, Wage and Tax Statement, from Petroleum Helicopters, Inc. (Helicopters), reporting wages, tips, and other compensation

---

[1] Section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

of $31,871.64, as well as Federal and State withholding taxes. He also attached to the return a Form 1099R, Statements for Recipients of Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting from the Helicopters Federal Credit Union a $14,135.44 distribution from a qualified retirement plan.

Although petitioner overreported his wages as $33,965.87[2] on the face of his Form 1040, he also included with the return a Schedule D, Capital Gains and Losses. On the Schedule D he reported as property held for 1 year or less "LABOR RECEIVED AS GIFT [from God]" from 1-1-94 through 12-31-94, having a basis equal to and a "sales" price of $33,965.87. He reported as an asset held for more than 1 year the retirement plan distribution, and also characterized it as payment for past labor received as a gift from God having a basis equal to its sale price.

Petitioner included with the 1994 tax return two documents he titled a "Statement" and a "Declaration". In the Statement he expressed his belief that, upon his "study and understanding", he was not "liable to the income taxes imposed by the Code." The Statement declares that to the extent the Forms 1040 and 1099R contradict the statements in his Declaration, "said forms are

---

[2] This represents the amount of total Social Security wages reported on petitioner's Form W-2 from Helicopters for the year 1994 rather than wages includable in gross income. Respondent concedes that petitioner overreported his wage income subject to income tax by $2,094.23 ($33,965.87-$31,871.64).

false and misrepresent the facts and law and are hereby refuted and denied."  He explained in the Declaration that his position was based on his belief that he had a basis in his labor, and upon his personal definitions of the words "wages", "compensation for services", "employee", and "employment".  In the Declaration he claimed that while he had "sold" his labor "under contract", he had not received "Wages" or "Compensation for Services" in 1994 from Helicopters.  He also expressed the opinion that he is a nonresident alien with no U.S.-source income.  The Form W-2 indicates that Helicopters is located in Lafayette, Louisiana.

Petitioner signed his 1994 Federal income tax return "under protest" and listed his occupation as "none".  Petitioner did not file Federal income tax returns for 1995 or 1996.

Respondent sent to petitioner a notice dated March 10, 1997, advising him that he had not yet filed a tax return for 1995. The notice informed petitioner that if he did not contact the Internal Revenue Service (IRS) immediately, the IRS might have to summons him or "Begin criminal proceedings * * * if you willfully fail to file a tax return."

Sometime in late 1997 respondent received a document signed by petitioner in which he asserts that he has determined that he was not required to file a tax return for 1995 or 1996, but that if he were so required, he would file as "head of household with 4 dependents."

Respondent issued a statutory notice of deficiency to petitioner determining that he had failed to report the receipt of an IRA distribution of $2,619 for 1994, was liable for the 10-percent additional tax on early distributions from qualified retirement plans, had failed to report income for 1995 and 1996 (determined by the Bureau of Labor Statistics (BLS)), and had failed to file timely a tax return for each of the 3 years 1994 through 1996.

Petitioner filed an amended petition with the Court alleging error on respondent's part in failing to allow him "deductions, allowances and credits", proceeding "as if" he had IRA income in 1994, or any income in 1995 and 1996, and in attempting to impose a direct or indirect tax upon his income, if any. The facts upon which he based his allegations of error are: (a) He "had expenses for the deductions, allowances and credits for the maintenance of his home and care of his family, including his wife and 2 children"; (b) assuming that the bank that held the IRA made payments to him in 1994, it did not send him a notice signed under penalties of perjury that it had made payments to him; (c) he was neither an employee nor self-employed during 1995 and 1996; and (d) respondent is attempting to impose improperly a direct tax without apportionment or an indirect tax "without identifying the commodity or material consumed."

Before answering the amended petition, respondent filed a motion to strike allegations of error and fact referencing the imposition of an improper direct or indirect tax on petitioner. Petitioner sent to respondent a motion for enlargement of time to file response to respondent's motion to strike in which petitioner alleged: "The petitioner works full time and must do his research and draft his response around his work schedule which generally means the weekends." After the Court granted him additional time, petitioner filed an objection to respondent's motion containing a lengthy discussion of whether the Federal income tax is a direct tax or an excise tax and attached a copy of a Congressional Research Report for Congress. The Court subsequently granted respondent's motion to strike.

At trial petitioner refused to present any evidence until after respondent had proceeded, insisting that respondent has the burden of proof because it is "an unreported income case". Respondent called petitioner as a witness, whereupon he proceeded to assert the Fifth Amendment privilege against self-incrimination in response to almost every question on direct examination.

## Discussion

### Burden of Proof

The threshold issue for decision concerns the placement of the burden of proof. Petitioner argues that when respondent's

determinations are based upon alleged unreported income the burden of proof shifts to respondent.

Respondent acknowledges that when allegations of unreported income are made, respondent must show some minimal evidence linking the taxpayer to that income before the presumption of correctness attaches to the notice. Respondent believes that the burden of proof remains with petitioner because evidence linking him to income-producing activity has been provided.

In general, the Commissioner's determinations contained in a notice of deficiency are entitled to a presumption of correctness, and the taxpayer has the burden of proving them incorrect.[3] See Rule 142(a); United States v. Janis, 428 U.S. 433, 441-442 (1976); Welch v. Helvering, 290 U.S. 111, 115 (1933); Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374, 1378 (7th Cir. 1990), affg. Malicki v. Commissioner, T.C. Memo. 1988-559. As a general rule, we do not look behind the statutory notice to examine the evidence used in making the determination. See Petzoldt v. Commissioner, 92 T.C. 661, 688 (1989);

---

[3] The Internal Revenue Service Restructuring & Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3001, 112 Stat. 685, 724-727, added sec. 7491, which shifts the burden of proof to the Secretary in certain circumstances. Sec. 7491, however, is applicable to "court proceedings arising in connection with examinations commencing after the date of the enactment of this Act." RRA 1998 sec. 3001(c). The RRA was enacted on July 22, 1998, while the petition and amended petition in this case were filed before July 22, 1998.

<u>Greenberg's Express, Inc. v. Commissioner</u>, 62 T.C. 324, 327 (1974).

The presumption, however, is not irrebuttable. In certain limited circumstances, if the taxpayer proves by a preponderance of the evidence that the Commissioner's determinations are arbitrary and excessive, or without rational foundation, then the presumption no longer applies. See <u>Page v. Commissioner</u>, 58 F.3d 1342, 1347 (8th Cir. 1995), affg. T.C. Memo. 1993-398; <u>Long v. Commissioner</u>, 757 F.2d 957, 959 (8th Cir. 1985).

Courts have identified an exception to the presumption of correctness where the Commissioner, in a case involving unreported income, introduces no direct evidence but rests on the presumption of correctness and the taxpayer challenges the deficiency on the grounds that it is arbitrary. See <u>Schad v. Commissioner</u>, 87 T.C. 609, 618 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987); see also <u>Senter v. Commissioner</u>, T.C. Memo. 1995-311.

Thus, to rebut the presumption of correctness and shift the burden of producing evidence to the Commissioner, the taxpayer must demonstrate that the Commissioner's deficiency assessment lacks a rational foundation or is arbitrary and excessive. See <u>Pittman v. Commissioner</u>, 100 F.3d 1308, 1313 (7th Cir. 1996), affg. T.C. Memo. 1995-243; <u>Page v. Commissioner</u>, <u>supra</u>; <u>Long v. Commissioner</u>, <u>supra</u>.

Petitioner relies on United States v. Janis, supra, and Portillo v. Commissioner, 932 F.2d 1128, 1133 (5th Cir. 1991), revg. in part, affg. in part and remanding T.C. Memo. 1990-68, as support for his position that the notice of deficiency in this case is arbitrary and excessive and therefore not entitled to the normal presumption of correctness. In Janis, the Supreme Court held that a "'naked' assessment without any foundation whatsoever" may be excessive and without rational foundation.[4] United States v. Janis, supra at 441. In Portillo, the taxpayer was issued a deficiency notice determining that he had received unreported income due to a discrepancy between the amount he had reported and the amount on a Form 1099 filed by his employer. The employer could account for only part of the discrepancy and had no records for the remainder. Because the taxpayer disputed that he was paid the income, the Court of Apppeals for Fifth Circuit found that the Commissioner had failed to substantiate the deficiency by any other means, the Court of Appeals concluded that the deficiency was excessive and arbitrary.

In a later case, the Court of Appeals for the Fifth Circuit explained that its holding in Portillo does not require "an

---

[4] Although the issue of a "naked assessment" generally arises when an illegal tax-generating activity is alleged, the Court of Appeals for the Eighth Circuit seems to have extended the principle to legal tax-generating activity as well. See Day v. Commissioner, 975 F.2d 534, 537 (8th Cir. 1992), affg. in part, revg. in part and remanding on another issue T.C. Memo. 1991-140.

independent investigation" by the IRS in all unreported income cases. Parker v. Commissioner, 117 F.3d 785, 787 (5th Cir. 1997), affg. per curiam an Order of this Court. Where a taxpayer does not dispute that he received the payment in question as reported on a third-party information return, the Commissioner has no duty to investigate. See id. And where the taxpayer fails to dispute a connection with the tax-generating income, the "naked assessment" doctrine does not apply. See Parrish v. Commissioner, 168 F.3d 1098, 1100-1101 (8th Cir. 1999), affg. T.C. Memo. 1997-474; Day v. Commissioner, 975 F.2d 534, 537 (8th Cir. 1992), affg. in part and revg. in part on another issue T.C. Memo. 1991-140; Zuhone v. Commissioner, 883 F.2d. 1317, 1326 (7th Cir. 1989), affg. T.C. Memo. 1988-142; Andrews v. Commissioner, T.C. Memo. 1998-316.

Petitioner denies in his trial memorandum that he was an "'employee,' engaged in 'employment' or 'self-employment'" in either 1994, 1995, or 1996 or that he received "'wages' or 'non-employee compensation'" in those years. Considering petitioner's legal arguments and the evidence in the record in this case, we interpret his use of quotation marks around words such as "employee" and "wages" to mean that petitioner uses those terms in a personal way that has a special meaning to him, not as they are ordinarily understood.

Petitioner does not argue that he did not receive payment for the "sale" of his labor in 1994, 1995, or 1996. Petitioner's argument is instead based on his "gift" theory of the taxability of wages. His Statement attached to the 1994 tax return declares the Forms W-2 and 1099R to be erroneous as well as his listing the Helicopters payments as wages. On Schedule D attached to the return, petitioner treated his wages as property held for 1 year or less, "LABOR RECEIVED AS GIFT [from God]", having a basis equal to its sales price.

Petitioner does not argue that he did not receive an IRA distribution in 1994. Petitioner's position is that such distributions represent nontaxable payments received from past "sales" of labor at no "gain". He also argues that the Form 1099R reporting an IRA distribution to him in 1994 is invalid unless it is "signed under the penalty of perjury", citing section 6065.

Upon analysis of the record in this case, we find that petitioner has not disputed his connection with the tax-generating income ascribed to him by respondent. Respondent determined for the year 1994 that petitioner received an unreported IRA distribution, and for 1995 and 1996, unreported income the amount of which was determined by using BLS statistics. The closest petitioner has come to a denial of the receipt of income is in his amended petition. The amended

petition alleges that respondent erred in determining a deficiency "as if" petitioner received IRA income for 1994 and any income for 1995 or 1996. In view of the arguments he has raised, we find this to be short of a denial that he received such income.

Minimal Factual Predicate

Even if we were to find that petitioner is actually disputing any connection with the tax generating income determined by respondent, our inquiry would not be concluded. Respondent's notice of deficiency maintains the presumption of correctness as long as the determination has "some minimal factual predicate." Pittman v. Commissioner, 100 F.3d at 1317; Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993), affg. T.C. Memo. 1991-636; Bjelk v. Commissioner, T.C. Memo. 1998-169. Respondent's determination fails where it is without "any foundation or supporting evidence." Page v. Commissioner, 58 F.3d at 1347; accord United States v. Janis, supra; Dodge v. Commissioner, 981 F.2d 350, 353 (8th Cir. 1992), affg. in part, revg. in part and remanding 96 T.C. 172 (1991).

We proceed to examine the record to determine whether there is some minimal factual predicate to support respondent's determination. Examining the Form 1040 filed by petitioner for 1994, we find that he was an employee who received wages from

employment for the year. Petitioner admitted in his amended petition that he had an IRA in 1994. Petitioner stated in correspondence to respondent that if he were required to file a Federal income tax return for 1995 and 1996, he would file as head of household with four dependents. In his amended petition, petitioner alleges that for 1995 and 1996, he had expenses for the maintenance of his home and care of his wife and 2 children. In an August 1998 motion sent to respondent, petitioner admitted that he currently "works full time".

Petitioner failed to file returns for 2 of the 3 years in this case and refused to cooperate in the ascertainment of his income for all 3 years. From the evidence in the record, we find that petitioner was employed in 1994, owned an IRA in 1994, supported a household for himself, his wife, and children in 1994, 1995, and 1996, and worked full time in 1998. Respondent has established in this case a minimal factual predicate for the determinations.

Where there is evidence of taxable income but no evidence as to the amount of such income, it is not arbitrary for respondent to determine that the taxpayer had income at least equal to the normal cost of supporting his family. See Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Andrews v. Commissioner, T.C. Memo. 1998-316. "Otherwise 'skillful concealment' would be

an 'invincible barrier' to the determination of tax liability."
Giddio v. Commissioner, supra at 1533.

In Palmer v. United States, 116 F.3d 1309, 1313 (9th Cir. 1997), the court found that the inference that taxpayers must have had sufficient income to support themselves for years when no income was reported, along with information linking one of the taxpayers to wages for at least part of a 4-year period, was a sufficient evidentiary foundation to establish the presumption of correctness. We find the facts of this case to be similar to those of Palmer v. United States, supra.

Additionally, the use of data compiled by the Bureau of Labor Statistics is an acceptable and reasonable method of income reconstruction.[5] See Pollard v. Commissioner, 786 F.2d 1063, 1066 (11th Cir. 1986), affg. T.C. Memo. 1984-536; Burgo v. Commissioner, 69 T.C. 729, 749 (1978); Cupp v. Commissioner, 65 T.C. 68 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977); Giddio v. Commissioner, supra at 1532.

While the presumption remains intact here, it creates only a prima facie case placing the burden on petitioner to rebut the

---

[5] The amounts determined as additional income in 1995 and 1996 in the notice of deficiency for petitioner were computed for a single person with no children. Petitioner was married and had two children over the age of 6. Respondent's computations understate by 64 percent the actual BLS figures for a person supporting a family the size of petitioner's.

presumption by showing that the inference of taxable earnings for family support is unreasonable. See <u>Parrish v. Commissioner</u>, <u>supra</u>; <u>Page v. Commissioner</u>, 58 F.3d 1342, 1348 (8th Cir. 1995); <u>Palmer v. United States</u>, <u>supra</u>; <u>Day v. Commissioner</u>, 975 F.2d 534 (8th Cir. 1992).

<u>Petitioner's Lack of Evidence</u>

Petitioner presented no testimony, nor did he call any witnesses to testify on his behalf that respondent's determinations are erroneous. He chose instead to assert his Fifth Amendment privilege against self-incrimination. Even if this was a valid assertion of the privilege, however, it is not a substitute for evidence and is not "intended to be * * * a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his." <u>United States v. Rylander</u>, 460 U.S. 752, 758 (1983); <u>Tweeddale v. Commissioner</u>, 841 F.2d 643, 645 (5th Cir. 1988), affg. T.C. Memo. 1987-197; <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 684 (1989). This rule applies to petitioner's meeting his burden of proof with respect to both the tax deficiency and the addition to tax under section 6651(a). See <u>Moore v. Commissioner</u>, 722 F.2d 193, 196 (5th Cir. 1984), affg. T.C. Memo. 1983-20; <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 685.

Not only has petitioner failed to adduce any evidence, his legal arguments are frivolous. The courts have consistently and uniformly held that wages are income and that a taxpayer has no basis in his labor. See, e.g., Beard v. Commissioner, 793 F.2d 139 (6th Cir. 1986), affg. per curiam 82 T.C. 766 (1984); Coleman v. Commissioner, 791 F.2d 68, 70 (7th Cir. 1986); Carter v. Commissioner, 784 F.2d 1006, 1009 (9th Cir. 1986); United States v. Burton, 737 F.2d 439, 441 (5th Cir. 1984); Funk v. Commissioner, 687 F.2d 264, 265 (8th Cir. 1982), affg. per curiam T.C. Memo. 1981-506.

Petitioner's argument that Forms 1099R are invalid unless signed under penalty of perjury is incorrect and is irrelevant to whether he received a distribution. Under section 6065, except as otherwise provided, a document required to be made under the internal revenue laws or regulations must contain or be verified under a written declaration that it is made under the penalties of perjury. The Secretary has provided by way of regulation that if a document is required by the regulations contained in chapter 61, or by the form and instructions issued with respect to the document, to be verified by written declaration under penalties of perjury, the document shall be so verified by the person signing it. See sec. 1.6065-1, Income Tax Regs. Requirements for reports on IRA distributions, however, are not found in

chapter 61 but are contained in chapter 1.  Section 1.408-7, Income Tax Regs., describes reports on distributions from individual retirement plans.  The regulation contains no requirement that Forms 1099-R be verified by written declaration under penalties of perjury, and neither the form nor the instructions contain such a requirement.  Therefore, no written verification by written declaration under penalties of perjury is required for the form.

Petitioner raised no argument and presented no evidence on the issue of his liability for the additional tax on early distributions from qualified retirement accounts.

On this record, we sustain respondent's determinations.

Section 6651(a)(1) Failure To File Timely

For each year in issue, respondent determined that petitioner is liable for the addition to tax under section 6651(a)(1) for his failure to file timely a Federal income tax return.  Section 6651(a)(1) provides for an addition to tax of 5 percent of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, not to exceed 25 percent.  The addition to tax for failure to file a return timely will be imposed if a return is not timely filed unless the taxpayer shows that the delay was due to reasonable cause and not willful neglect.  See sec. 6651(a)(1).

There is no evidence in the record that suggests that petitioner's failure to file timely a Federal income tax return for any year in issue was due to reasonable cause and not due to willful neglect.  Consequently, we sustain respondent's determination that petitioner is liable for the additions to tax under section 6651(a)(1) for the years 1994 through 1996.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.